

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0563-17

**TERRI REGINA LANG, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRD COURT OF APPEALS
## BURNET COUNTY

YEARY, J., filed a dissenting opinion.

## DISSENTING OPINION

We are called upon in this case to review a court of appeals' interpretation of a penal statute. Here, the question is whether the reach of the organized retail theft statute extends to Appellant's conduct. The court of appeals found that the language of the statute plainly did, and it declined to consult extra-textual factors to "construe" that which it believed needed no construction. I agree that the meaning of the statute is plain on its face—though I believe its plain meaning to be different in an important respect from the court of appeals'

perception. Because I find the statutory language to be unambiguous, I disagree with this Court's resort today to extra-textual factors. And because I believe the statute on its face plainly extends to proscribe Appellant's conduct, I would ultimately affirm the court of appeals' judgment. Because the Court does not, I respectfully dissent.

## I. INTRODUCTION

Appellant was convicted of the offense of organized retail theft, under Section 31.16(b)(1) of the Texas Penal Code. *See* TEX. PENAL CODE § 31.16(b) ("A person commits an offense if the person intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, or disposes of . . . stolen retail merchandise[.]"). On appeal, she challenged the legal sufficiency of the evidence to support her conviction, contending that the evidence at trial showed nothing more than that she was a solitary shoplifter, and not a member of an organized retail theft ring.

The court of appeals held that the plain language of Section 31.16(b)(1) reaches unaffiliated shoplifting offenders; and, because there was sufficient evidence to establish that Appellant came to possess stolen merchandise of the requisite value from a grocery store, the court of appeals held the evidence to be legally sufficient to support her conviction as a state-jail felon. *Lang v. State*, No. 03-15-00332-CR, 2017 WL 1833477, at *7 (Tex. App.—Austin May 5, 2017) (mem. op., not designated for publication). Finding the meaning of the statute to be plain, the court of appeals refused even to consider Appellant's proffered evidence of legislative history, which, she contended, supports the proposition that the Legislature did

not intend the statute to duplicate the theft statute's coverage of the solitary shoplifter.[1] *See id*. ("[B]ecause we conclude that the statute is unambiguous and does not lead to absurd results, we need not, indeed may not, resort to extra-textual sources."). We granted Appellant's petition for discretionary review in order to address the court of appeals' methodology in interpreting the statute, as well as its ultimate conclusion regarding the scope of the statute. Although I do not agree with every particular of the court of appeals' analysis, I would nevertheless affirm its judgment.

## II. BACKGROUND

Appellant entered an HEB in Marble Falls on October 2, 2013, with several reusable grocery bags. She spent more than an hour in the aisles of the store, placing merchandise into the reusable bags in her shopping cart. When she approached the check-out counter, she placed several of the reusable bags on the conveyer belt, but an additional reusable bag containing merchandise remained hanging from the side of her shopping cart—tied to the handle of the cart but on the side that was away from the cashier. Appellant never placed those items of merchandise on the conveyer belt. Once she had paid for the items that she *had* placed on the conveyer belt, she exited the store. She was stopped just outside the door, and the police were called. The unpaid-for items totaled over $500 in retail value.

Rather than charge her under the ordinary theft statute, the State indicted Appellant

---

[1] There is no dispute that Appellant's conduct could have been prosecuted under Section 31.03 of the Penal Code—our generic theft statute. *See* TEX. PENAL CODE § 31.03(a) & (b)(1) ("A person commits an offense if he unlawfully appropriates property with intent to deprive the owner" where "[a]ppropriation of property is unlawful if . . . it is without the owner's effective consent[.]").

for the more particularized offense of organized retail theft, alleging that she "did intentionally conduct and promote and facilitate an activity in which [she] received and possessed and concealed and stored stolen retail merchandise," of an amount exceeding $500 in value. The jury convicted her of that offense, and the trial court assessed her punishment at twenty months' confinement in a state-jail facility and a fine of $1,060. *See* TEX. PENAL CODE § 31.06 (c)(3), as amended by Acts 2011, 82nd Leg., ch. 323, § 3, p. 942, eff. Sept. 1, 2011 (amending the statute to provide that retail theft of an amount of more than $500 but less than $1,500 constitutes a state-jail felony, susceptible to punishment of confinement in a state jail for not more than two years or less than 180 days, and a fine of up to $10,000, under TEX. PENAL CODE § 12.35(a) and (b)).

On appeal, Appellant argued that the evidence was insufficient to prove that she had committed the offense of organized retail theft because there was no evidence to show that her actions were part of a larger criminal enterprise. She maintained both that: 1) the offense of organized retail theft requires evidence that Appellant was acting in concert with others as part of a larger group activity; and 2) the organized retail theft statute cannot reasonably be construed to reach the conduct of an ordinary shoplifter, even if she is acting with others. Relying on the literal language of the statute itself, as illuminated by the rules of grammar and standard dictionary definitions, the court of appeals held that the plain language of the organized retail theft statute belied Appellant's asserted construction. *Lang*, 2017 WL 1833477, at *3–7. Along the way, the court of appeals declined to consider the legislative

history of the statute, observing that, "because we conclude that the statute is unambiguous and does not lead to absurd results, we need not, indeed may not, resort to extra-textual sources." *Id*. at \*7. "Consequently," the court of appeals concluded, "we give effect to the plain meaning of the statute, which does not require proof that [A]ppellant committed this offense working with others and applies to the underlying theft [A]ppellant committed." *Id*.

In her petition for discretionary review, Appellant now argues that: 1) the literal language of the statute is ambiguous; 2) even if plain, the literal language of the statute leads to absurd results that the Legislature could not conceivably have intended, and; 3) even if the statutory language seems plain and sensible, Section 311.023 of the Code Construction Act (applicable to the Texas Penal Code via TEX. PENAL CODE § 1.05(b)) would permit the court of appeals to consult extra-textual sources such as legislative history for help in discerning the legislative intent. She argues that *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991), should be disavowed to the extent that it prohibits judicial reference to legislative history in the absence of ambiguity or absurdity in the statutory language. *See* TEX. GOV'T CODE § 311.023 (providing that "a court may consider among other matters" "legislative history" when construing a statute, "whether or not the statute is considered ambiguous on its face"). Especially when considering the legislative history, Appellant contends, it is clear that the Legislature did not intend for the organized retail theft statute to reach the conduct of an ordinary shoplifter—or, at least, not an ordinary *unaffiliated* shoplifter.

### III. *BOYKIN*

In *Boykin*, we emphasized the primacy of the literal language of the statute itself. We explained that "we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." 818 S.W.2d at 785. Just as the court of appeals discerned in this case, *Lang*, 2017 WL 1833477, at *7, *Boykin* absolutely prohibits courts from consulting extra-textual factors such as legislative history unless the literal language of the statute is ambiguous, or unless the plain language of the statute would lead to absurd results. *See* 818 S.W.2d at 785–86 ("If the plain language of statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then*, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra*textual factors as executive or administrative interpretations of the statute or legislative history."). For courts to resort to examination of extra-textual considerations to justify their construction of statutes that are plain on their faces would only serve to invade the province of the Legislative Department. *Id*. at 786 n.4. The Texas Supreme Court is in accord with this methodology. *See Bank Direct Capital Finance v. Plasma Fab*, 519 S.W.3d 76, 84–85 (Tex. 2017) ("We must resist the interpretive free-for-all that can ensue when courts depart from the statutory text to mine extrinsic clues prone to contrivance. * * * If it is not necessary to depart, it is necessary not to depart.").

Appellant argues that, *Boykin*'s principles notwithstanding, even if we are unable to

agree with her that the organized retail theft statute is ambiguous or absurd, we should still consider the legislative history. We are authorized to do so, she maintains, under Section 311.023(3) of the Code Construction Act, and she asserts that the legislative history will definitively establish that Section 31.16 was aimed at shoplifting collectives, and was simply not meant to duplicate the theft statute's coverage of unaffiliated shoplifters. But, I continue to believe that, if the literal language and structure of a statute render it of sufficient clarity that its proper construction cannot be reasonably doubted, it would improperly encroach upon the Legislative Department for this Court to engage in further construction of it. *See Boykin*, 818 S.W.2d at 786 & n.4 (*Boykin*'s method of statutory construction is "constitutionally and logically compelled[,]" and for courts to look for legislative meaning apart from statutory language that is unambiguous risks "courts . . . assuming legislative authority"); TEX. CONST. art. II § 1 ("[N]o person, or collection of persons, being of one of these departments [of state government, namely, Legislative, Executive, and Judicial], shall exercise any power properly attached to either of the others[.]"). It is one thing for a court to construe the meaning of a statute when its language or structure leave genuine room for doubt. It is quite another thing to tinker with the objectively plain meaning of a statute with a view to improving it. The former falls within the proper domain of judges. The latter is the exclusive bailiwick of the Legislative Department.

In this case, I agree with the court of appeals that the language of the statute plainly permits prosecution of the solitary unaffiliated shoplifter who violates the terms of the statute

and that, consistent with *Boykin*, resort to extra-textual sources would therefore be forbidden. To the extent that Section 311.023 nevertheless purports to authorize courts to do so, the statute itself is at risk of being declared an unconstitutional delegation of legislative authority to the courts. For this reason, I would decline Appellant's invitation to overrule that aspect of *Boykin*.

## IV. THE UNAFFILIATED SHOPLIFTER

Under the literal language of Section 31.16(b)(1), it is an offense if:

- a person
- intentionally
- conducts, promotes, or facilitates
- an activity
- in which the [same] person
- receives, possesses, conceals, stores, barters, sells, or disposes of
- retail merchandise
- that is stolen.

The court of appeals held that this language plainly suffices to proscribe any act of shoplifting, whether committed by a single actor or one acting in concert with others. First, the court of appeals set out various dictionary definitions of the words "conducts, promotes," and "facilitates," and observed that, "[i]n looking at the definitions of these terms, although an individual's behavior *may* contribute toward a greater collective effort or a broader group objective, the requirement of collective action or group behavior is not inherent in the definitions." *Lang*, 2017 WL 1833477, at \*4–5. It next observed that the statute does not explicitly mention that other persons must be involved; a single person may "conduct,

promote, or facilitate an activity" in which she ultimately "possesses . . . stolen retail

merchandise."[2] *Id*. at 5. The direct object of the transitive verbs "conducts, promotes, or

---

[2] Approximately one-third of the states have enacted a criminal statute for organized retail theft. The majority of those statutes *explicitly* require the defendant to have committed the offense in conjunction with another person or other persons in order to be convicted of organized retail theft. *See* CON. GEN. STAT. ANN. § 53-142k (West 2010) ("Any person who, for financial gain and in conjunction with one or more persons, commits larceny by shoplifting . . . shall have committed the offense of organized retail theft."); ME. REV. STAT. ANN. Tit. 17-A, § 363 (2015) ("A person is guilty of organized retail theft if the person commits 2 or more thefts of retail merchandise . . . pursuant to a scheme or course of conduct engaged in by 2 or more persons . . . ."); MASS. GEN. LAWS ANN. Ch. 266, § 30D (West 2015) ("A person commits an organized retail crime if the person, acting in concert with 2 or more persons . . . steals, embezzles, or obtains by fraud . . . retail merchandise . . ."); MISS. CODE ANN. § 97-43-3.1 (West 2014) ("It shall be unlawful for any person to conduct, organize, supervise, or manage . . . an organized theft of fraud enterprise . . . [defined as] any association of two or more persons who engage in the conduct . . . ."); N.H. REV. STAT. ANN. § 637:10-c (2010) ("A person is guilty . . . if he or she conspires with one or more persons to engage for profit in a scheme or course of conduct of theft . . . ."); N.C. GEN. STAT. ANN. § 14-86.6 (West 2017) ("A person is guilty . . . if the person . . . conspires with another person to commit theft of retail property . . . ."); OR. REV. STAT. ANN. § 164.098 (West 2008) ("A person commits the crime of organized retail theft if, acting in concert with another person . . . ."); 18 PA. STAT. AND CONS. STAT. ANN. § 3929.3 (West 2010) ("A person commits organized retail theft if the person organizes, coordinates, controls, supervises, finances, or manages any of the activities of an organized retail theft enterprise . . . [defined as] a corporation, partnership, or any other type of association . . . ."); TENN. CODE ANN. § 39-14-113 (West 2017) ("A person commits the offense of organized retail crime when the person works with one or more persons to commit theft of any merchandise . . . ."); WASH. REV. CODE ANN. § 9A.56.350 (West 2017) ("A person is guilty of organized retail theft if he or she commits theft of property . . . with an accomplice . . . ."); W. VA. CODE ANN. § 61-3A-7 (West 2017) ("Any person who enters into a common scheme or plan with two or more other persons to violate the provisions of section one of the article . . . shall be guilty of a felony . . . ."). But other states just as explicitly allow for a defendant to be guilty of organized retail theft even when acting alone. ARIZ. REV. STAT. ANN. § 13-1819 (2009) ("A person commits organized retail theft if the person acting alone or in conjunction with another person does . . . ."); DEL. CODE ANN. tit. 11, § 841B (West 2007) ("organized retail theft crimes committed by a person or group of persons . . . ."); MICH. COMP. LAWS ANN. § 752.1084 (West 2013) ("A person is guilty of organized retail crime when that person, alone or in association with another person, does . . . ."); NEV. REV. STAT. ANN. § 205.08345 (West 2013) ("'organized retail theft' means committing, either alone or with any other persons, a series of thefts of retail merchandise . . . ."). One state has enacted an organized retail theft statute that, like ours, does not explicitly indicate whether the crime must be committed in conjunction with another person or persons to be considered organized retail theft. LA. STAT. ANN. § 14:67.25 (2017) ("Organized retail theft is the intentional procuring, receiving, or concealing of

facilitates," the court of appeals added, is the word "activity"—a "thing," *not* other actors. *Id*. at *6. From these premises, the court of appeals concluded: "Nothing in the statutory language requires that the person committing the offense work with others when engaging in the prohibited behavior." *Id*.

To this extent, I agree with the court of appeals. When the Legislature wishes to require the involvement of more than one person before it may be said that an offense has been committed, it well knows how to do so.[3] Section 31.16(b) contains no such language. Moreover, some of the statutorily defined manners and means of perpetrating the offense of organized retail theft plainly contemplate circumstances involving conduct of a solitary shoplifter—regardless of whether the shoplifter is acting within or as part of a greater collective enterprise. A person commits the offense if she:

- conducts
- an activity
- in which the [same] person
- possesses
- stolen
- retail merchandise

Reduced to these particular manner and means of committing the offense, it becomes clear how a single, unaffiliated shoplifter may be guilty of the offense. A solitary person may

---

stolen retail property with the intent to sell, deliver, or distribute that property.").

[3] *See, e.g.*, TEX. PENAL CODE § 15.02(a)(2) (requiring the agreement of "one or more persons" to engage in a criminal conspiracy); TEX. PENAL CODE § 71.01(a) (defining "combination" to require "three or more persons" for purposes of the offense of engaging in organized criminal activity).

"conduct" an activity in which she possesses retail merchandise that her own earlier conduct caused to be stolen. It is true that the verb "conduct" carries at least one connotation suggesting "management" or "direction."[4] But, as the court of appeals rightly pointed out, what must be managed or directed, under the plain grammatical structure of the statute, is the "activity," not other people. *Id*. Nothing in the statute requires that the "activity" must be a collaborative effort involving more than one person.[5] In this case, Appellant left the store with merchandise which she had already shoplifted,[6] and that constituted activity in which she possessed stolen retail merchandise. The statute plainly requires nothing more for conviction.

Appellant argues that the statute does not contemplate proscribing the act of shoplifting itself, since it plainly contemplates criminalizing only "an activity in which" retail merchandise, already "stolen," is then "received, possessed," etc. Applicant's Brief on

---

[4] As relevant to the statute at hand, the verb "conduct" may mean: "**1 :** to bring by or as if by leading : LEAD, GUIDE, ESCORT . . . **2 b :** to have the direction of : RUN, MANAGE, DIRECT". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, at 474 (2002). But it may also mean: "**4 :** to behave or comport (oneself) : ACQUIT". *Id.*

[5] That Section 31.16 is denominated "*organized*" retail theft—to the extent that suggests an organization of multiple persons—cannot affect our construction of the statute if the text is otherwise plain. *See Baumgart v. State*, 512 S.W.3d 335, 339 (Tex. Crim. App. 2017) ("Although relevant as an extra-textual factor in construing the text of a statute when consideration of such factors are allowed, '[t]he heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute.'") (quoting TEX. GOV'T CODE § 311.024, and citing *Ex parte Couch*, 838 S.W.3d 252, 254–55 (Tex. Crim. App. 1992)).

[6] *See State v. Ford*, 537 S.W.3d 19, 24 (Tex. Crim. App. 2017) (citing *Hill v. State*, 633 S.W.2d 520, 521 (Tex. Crim. App. 1981)) ("[A] customer of a store can exercise control over property with intent to deprive, even if the customer has not yet left the store with the property.").

Discretionary Review at 36–39. I agree with this much of Appellant's argument. And it is upon this point that I believe a plain reading of the statute differs from the understanding that the court of appeals imposed upon it: The statute does not proscribe shoplifting *per se*. Instead, it proscribes the subsequent possession of already-stolen retail merchandise in the course of some further activity—here, at least, the shoplifter leaving the store.

I also think the statute was plainly meant to cover more than just the conduct of "fences."[7] In my view, the affiliated "boosters"[8]—the shoplifters who supply the fences—were also plainly meant to fall within the purview of the statute, inasmuch as they might, after committing a theft, "conduct an activity in which they possess [the] stolen retail merchandise" before turning it over to their fences.[9] Indeed, it is hard to conceive of an "organized retail *theft*" statute in which the boosters would *not* be covered, at least to some extent.[10] But, as the court of appeals held, and I also agree, nothing in the language of the statute plainly excludes *unaffiliated* shoplifters who come to possess stolen retail

[7] "Fence" is a slang term for "[o]ne who receives and sells stolen goods." WEBSTER'S II NEW COLLEGE DICTIONARY 412 (1999).

[8] "Booster" is a slang term for "shoplifter." WEBSTER'S II NEW COLLEGE DICTIONARY 128 (1999).

[9] Indeed, several of the punishment enhancement provisions of Section 31.16 are plainly aimed at the conduct of boosters, such as those based upon the activation (or deactivation) of a fire exit alarm or the deactivation of a retail theft detector. TEX. PENAL CODE § 31.16(d)(2).

[10] Of all the statutes denominated "organized retail theft" that are identified *ante* in note 2, all but one—the Louisiana statute—explicitly proscribe the activity either of *both* fences *and* boosters (Connecticut, Delaware, Michigan, Mississippi, North Carolina, Oregon, Pennsylvania, Tennessee, Washington, and West Virginia), or of boosters *alone* (Arizona, Maine, Massachusetts, Nevada, and New Hampshire).

merchandise. *See Lang*, 2017 WL 1833477, at *7 (holding that the statute "does not require proof that appellant committed this offense working with others"). Under the plain terms of the statute, an unaffiliated shoplifter may also commit organized retail theft by engaging in some further activity after the theft in which she possesses the already-stolen retail merchandise.

I do disagree with the court of appeals to the extent that it seems to have held that the statute may reasonably be read to criminalize the mere act of theft. To *that* extent, I believe that the court of appeals has misconstrued the plain import of the statute. Section 31.16(b)(1) explicitly requires the actor to possess retail merchandise that has *already* been "stolen." TEX. PENAL CODE § 31.16(b)(1). So it is not the "the simple act of shoplifting" (or theft) that is proscribed. I believe the statute is *only* reasonably susceptible to a reading that more than a simple theft is required. That much is unambiguous, and so resort to extra-textual factors on that account is not permitted.

Here, Appellant acquired or exercised control over the retail merchandise while still in the store, with the requisite intent to deprive the owner of it; thus, she had already committed the simple act of shoplifting before she ever left the store. *See State v. Ford*, 537 S.W.3d 19, 24 (Tex. Crim. App. 2017) (citing *Hill v. State*, 633 S.W.2d 520, 521 (Tex. Crim. App. 1981)) ("[A] customer of a store can exercise control over property with intent to deprive, even if the customer has not yet left the store with the property."). Then, when she exited the store, she "conduct[ed] . . . an activity in which [she] . . . possess[ed] . . . [already]

stolen retail merchandise." TEX. PENAL CODE § 31.16(b)(1). She violated the plain language of the statute. Moreover, as I have taken pains to demonstrate, there is no reasonable basis in the language of the statute to suppose that more than one individual must necessarily be involved in the proscribed "activity" before the statute can be violated—so long as that "activity" goes beyond "the simple act of shoplifting" or theft.

## V. THE COURT'S CONSTRUCTION OF THE STATUTE

After consulting various bill analyses, however, the Court nevertheless comes to the conclusion that group activity is what the statute was meant to address. *See* Majority Opinion at 15–16 ("[T]he statute was enacted for the purpose of targeting professional theft rings involved in the large-scale theft, transfer, repackaging, and reselling of stolen retail merchandise."). I do not disagree that the statute plainly permits going beyond the conduct of an unaffiliated shoplifter—and was, indeed, obviously aimed primarily at the activity of fences and their affiliated boosters. But, as written, the statute is just as plainly not limited to such group activity.

Also, there is nothing inherently contradictory about a statute designed to reach both group activity and the activity of a lone actor. For example, a lone actor who first shoplifted retail merchandise and then later *fenced* it (*i.e.*, "conduct[ed] an activity in which [he] barter[ed], [sold], or dispose[d] of" it) would plainly be subject to prosecution under the statute. No group activity need be involved in this hypothetical. Why should group activity be necessary before a lone shoplifter can be prosecuted—so long as, as in this case, she

further "conducts an activity in which [she] . . . possesses . . . stolen retail merchandise"?

In the final analysis, however, my dispute with the Court may ultimately boil down to nothing more than a basic disagreement about whether the act of leaving the store after having shoplifted the retail merchandise should suffice to prove that Appellant "conduct[ed] an activity in which [she] . . . possesse[d] . . . stolen retail merchandise." None of these statutory terms has acquired a special or technical acceptation.[11] It seems to me that a rational juror could rationally apply the statutory language to convict Appellant on the facts of this case. *Cf. Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) ("[W]hen determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use."); *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995) (same). If the theft was completed before Appellant left the store, then how was leaving the store *not* an activity in which she possessed stolen retail merchandise? The Court wholly fails to address this question.

## VI. CONCLUSION

As judges on a court of last resort, we cannot avoid resolving disputes about how statutory language can permissibly be implemented. We frequently find ourselves caught in

---

[11] Unless a word has acquired a technical legal meaning, "definitions for terms that are not statutorily defined are not considered to be the 'applicable law' under [TEX. CODE CRIM. PROC. art. 36.14], and it is thus generally impermissible for the trial court to define those terms in the jury instructions." *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). Why, then, should we feel compelled to construe a limitation on the ordinary terms in the statute at this stage of the game that we would have disallowed in the jury charge?

the cross-fire between our unmistakable judicial obligation to interpret and apply the law and the equally inescapable constitutional prohibition against actually *making* law. When a statute is truly ambiguous, then of course we must construe it. But when it is plain, we absolutely may *not*. We must implement its plain language. For my part, I am more concerned with avoiding judicial legislation than I am with making sure that every statute is implemented in exactly the way *I think* some legislators hoped that it would be implemented. In my view, the language of the statute should ordinarily control, and we should err against declaring statutory language to be ambiguous except as a last resort. The statute at issue in this case is plain enough, as far as I am concerned, that we need not resort to extra-textual factors. In any event, nothing about the legislative history as set out in the Court's opinion is necessarily inconsistent with what I believe to be the plain import of the statute.

I would affirm the judgment of the court of appeals. Because the Court does not, I respectfully dissent.

FILED:      November 21, 2018
PUBLISH