In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00290-CR
_____

KENNETH AARON MIMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR32830

MEMORANDUM OPINION

Kenneth Aaron Mims appeals his conviction for possession of a controlled substance in an amount less than one gram. *See* Tex. Health & Safety Code Ann. § 481.115(b) (West 2017); Tex. Penal Code Ann. § 12.425 (West 2019). In a single issue before the Court, Mims argues that the trial court erred when it denied his motion to suppress based on a warrantless search by a police officer whose justification for stopping Mims was community caretaking. Mims contends the

officer did not have a reasonable belief that Mims was in distress or have reasonable suspicion or probable cause to stop Mims in his vehicle pursuant to the Fourth Amendment. *See* U.S. CONST. amend. IV. For the reasons explained below, we affirm the judgment of the trial court.

## Motion to Suppress Hearing

Liberty County Sheriff's Deputy Martel was the only witness to testify during the hearing on the motion to suppress.[1] The deputy testified that on January 30, 2016, he received notification from a Liberty County 911 dispatcher about a possible intoxicated driver on the roadway. According to the deputy, he did not personally hear the 911 call, but the dispatcher relayed information about the call. Deputy Martel explained that he initially passed Mims's vehicle on the road because he was en route to assist other law enforcement officers who pulled over another vehicle matching the description. Once it was determined that other officers stopped the wrong vehicle, the deputy then identified Mims's car as matching the description of the vehicle given by the 911 caller and initiated a stop. The 911 caller continued following Mims's vehicle, stopped, and remained at the scene to provide the officer with a statement.

---

[1] The State conceded at the hearing that the deputy performed a warrantless search.

The deputy stated he did not observe Mims violate any traffic laws or exhibit any signs of physical distress before he stopped Mims nor had he determined probable cause. The deputy testified he believed Mims was intoxicated and a possible danger to himself and others based on the information provided by the 911 caller.[2] Deputy Martel testified that he pulled Mims over at 9:30 p.m. and described that particular stretch of highway as "well-traveled" at that time of night. He also testified that Mims was driving only 49 miles per hour when the posted speed limit was 65, presenting a "potential danger or hazard" for other drivers.[3] After detaining Mims, the deputy discovered PCP in Mims's car, and he arrested Mims for the possession.[4]

The trial court denied Mims's motion to suppress stating that based on the "community care-taking exception" and "exigent circumstance," the officer's initial

---

[2] At the State's request, the trial court admitted a recording of the 911 call into evidence at the hearing. On the recording, the caller identified himself, and the dispatcher can be heard telling law enforcement that the driver was stopped on the side of the road, was belligerent, possibly intoxicated, and that his car "reeked" of PCP and alcohol.

[3] The deputy admitted during cross examination that Mims was approaching the City of Dayton, and the speed limit significantly decreases when a vehicle enters the city.

[4] Our recitation of the facts only addresses the events leading to Mims's initial detention. Mims was not challenging the "voluntariness of the consent" to search his vehicle. Accordingly, in the motion to suppress hearing, the trial court only considered whether the deputy's initial detention of Mims was illegal.

detention of Mims was "reasonable under the totality of the circumstances." After the trial court declined to suppress the evidence discovered following the search, the jury found Mims guilty of possession of a controlled substance in an amount less than one gram. Mims pleaded true to two enhancements, and the trial court sentenced him to fourteen years of confinement in the Texas Department of Criminal Justice. Mims timely appealed.

**Standard of Review**

A motion to suppress evidence is nothing more than a specialized objection. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.). At trial, a trial court may reconsider, and even change, its order on an earlier suppression hearing. *See Montalvo v. State*, 846 S.W.2d 133, 137–38 (Tex. App.—Austin 1993, no pet.). Thus, upon review, an intermediate appellate court is not confined to the record of the suppression hearing but may consider the entirety of the record to determine the propriety of the trial court's order. *See Wallace v. State*, 932 S.W.2d 519, 521 (Tex. App.—Tyler 1995, pet. ref'd).

We use a bifurcated standard of review when examining a trial court's ruling on a motion to suppress. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). Under

4

that standard, we "must give 'almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.'" *Id.* (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Likewise, if the trial court resolves a motion to suppress based on a resolution of mixed questions of law and fact, its evaluation of the credibility and demeanor of the witnesses is given almost total deference. *Id.* (citing *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)). In contrast, if the trial court's findings do not depend on the trial court's evaluations of the credibility and demeanor of the witnesses or turned on resolving a pure question of law, we review its ruling using a *de novo* standard. *Id.* (citing *Montanez*, 195 S.W.3d at 107); *Guzman*, 955 S.W.2d at 89 (citation omitted).

The record before us reveals that Mims did not ask the trial court to prepare written findings of fact and conclusions of law explaining its ruling on his motion to suppress. Because there are no written findings in the record, we "impl[y] the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light most favorable to the trial court's ruling) supports these implied fact findings." *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *accord State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000)). The decision of the trial court

will be sustained if it is correct under any theory of law applicable to the facts of the case. *State v. Gray,* 158 S.W.3d 465, 467 (Tex. Crim. App. 2005); *Ross,* 32 S.W.3d at 856.

**Analysis**

In his sole issue, Mims argues that "the controlled substance introduced into evidence at his trial was seized as the result of an illegal warrantless detention in violation of the Fourth Amendment to the United States Constitution[.]" Mims contends that the deputy did not have reasonable suspicion or probable cause to detain him based on the information provided by the 911 caller and the deputy's observations of Mims's driving. In addition, he argues the deputy could not reasonably conclude Mims was in distress or creating exigent circumstances as a danger to others on the highway.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (citing *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000)). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim.

6

App. 1986)). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Ford*, 158 S.W.3d at 492 (citation omitted). Once the defendant has made this showing, the burden then shifts to the State to prove that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. The State stipulated this case involved a warrantless stop and arrest. Therefore, the State had the burden to establish the reasonableness of the stop. *See id*.

"[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . . [.]" *South Dakota v. Opperman*, 428 U.S. 364, 375 (1976) (citations omitted). "Under the Fourth Amendment, a temporary detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. (2005) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "These facts must amount to more than a mere hunch or suspicion." *Id*. (citing *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)).

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can

7

arise from information that is less reliable than that required to show probable cause.

*Ala. v. White*, 496 U.S. 325, 330 (1990) (citations omitted). Reasonable suspicion can arise not only from an officer's personal observations, but from information provided by another person. *See id.* "We have firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.'" *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Adams v. Williams,* 407 U.S. 143 (1972)). While tips from anonymous sources lack "sufficient indicia of reliability," information provided by an identified caller who could be held "accountable for the intervention" improves the reliability of the information provided to the officer. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (citation omitted). This is an objective standard that disregards the officer's subjective intent and analyzes whether there was an objectively verifiable basis for detention. *Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011). "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable

8

conclusion that criminal activity is afoot." *Matthews*, 431 S.W.3d at 603 (citation omitted).

The Deputy had reasonable suspicion to stop and investigate Mims based on the information the 911 caller provided. The deputy testified that he did not witness Mims in any distress when he followed his vehicle, but he believed that Mims was intoxicated based on the information provided by the 911 caller. The caller gave a detailed description of the car, its location, the license plate, and Mims's mental and physical condition. The 911 caller reported to the dispatcher that he pulled over to assist a motorist and when he asked the driver if he was okay, the driver could not talk. The 911 caller testified that when he first approached the car, the driver's head was slumped over between the steering wheel and the window, his eyes were closed, and he was non-responsive. Once the 911 caller roused the driver, he attempted to attack the caller with a car jack. The 911 caller reported that the driver and car emanated a strong odor of PCP. While following the car, the 911 caller stated that the driver was swerving, and he believed the driver might cause an accident.

While Mims's distress was not apparent to the deputy, examining the deputy's detention and the totality of the circumstances demonstrates that the deputy acted reasonably. The deputy had reports of an intoxicated driver from an identified 911 caller who described the driver as belligerent and said he "reeked" of PCP and

9

alcohol. The driver stayed with the reported vehicle, turned on his flashers to alert the deputy to his location, and gave a statement following Mims's arrest. A police officer acts reasonably when he relies on information provided by a concerned citizen. *See State v. Ford*, 537 S.W.3d 19, 26 (Tex. Crim. App. 2017) (in considering probable cause, the court held that an officer can rely on a concerned citizen's report, because citizen informants who identify themselves "are considered inherently reliable"); *Derichsweiler*, 348 S.W.3d at 915–16) (analyzing reasonable suspicion, the court held that even if a police officer is not "personally aware" of the information provided by the 911 caller, and the dispatcher did not provide all the information to the officer, a court examines the "totality of that reliable information" such as facts and reasonable inferences); *Brother*, 166 S.W.3d at 258–59 n.5 (noting that an officer does not have to personally witness information to corroborate an eyewitness account to be reliable and that an officer's reliance on information provided by a citizen-eyewitness where the citizen gave a detailed description of the driver, car, and the erratic driving, followed the suspect with emergency lights on, kept in contact with the dispatcher while following the suspected driver, and remained at the scene after the stop, did not run afoul of the Fourth Amendment).[5]

---

[5] The State argued that *Derichsweiler v. State* applied in establishing that the deputy was justified in stopping Mims. *See* 348 S.W.3d 906, 915–16 (Tex. Crim. App. 2011). While the trial court stated that it did not rely on *Derichsweiler* when it

Even though the trial court denied the motion to suppress the evidence discovered from a search after a warrantless investigative stop on the basis of community caretaking, we hold the record supports that the arresting officer had reasonable suspicion to stop Mims. This is based on the articulated reasonable facts provided by an identified 911 caller regarding the condition of the suspected driver. This information allowed the officer to form a reasonable suspicion that Mims was operating a motor vehicle upon the roadways while intoxicated, which justified the warrantless investigative stop. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim.

---

denied Mims's motion to suppress, Mims attempts to distinguish *Derichsweiler* because that officer relied on the 911 caller's description of the defendant's behavior *as well as his own observations of the defendant's behavior* and the officer knew he was stopping the correct vehicle. (emphasis added.) In *Derichsweiler*, the 911 caller provided a detailed description of the suspect, stating that the defendant was staring at them and causing him to fear for his safety, and the caller stayed on the phone with the 911 dispatcher until police arrived. *Id.* at 909. The officer stated that the only information he had for reasonable suspicion came from the dispatcher about a suspicious vehicle. *Id.* at 910. The Court of Criminal Appeals found the detailed information provided by the 911 caller enough to justify reasonable suspicion for the initial stop based on the totality of the circumstances, holding "[i]t matters not that all of this conduct could be construed as innocent of itself; for purposes of a reasonable-suspicion analysis, it is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon." *Id.* at 917. According to the Court, reasonable suspicion under the Fourth Amendment can be formed "on the basis of a lesser quantum or quality of information[,]" because a warrantless investigative stop is a "significantly lesser intrusion" on the privacy of a person than a custodial arrest. *Id.* at 916.

App. 2002) ("Even when the trial judge gives the wrong reason for his decision, if the decision is correct on any theory of law applicable to the case it will be sustained.") (citations omitted); *see also Gray*, 158 S.W.3d at 467; *Ross*, 32 S.W.3d at 856. We overrule Mims's sole issue on appeal.

## Conclusion

After determining that the trial court properly denied Mims's motion to suppress, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 12, 2019
Opinion Delivered September 25, 2019
Do not publish

Before McKeithen, C.J., Kreger and Horton, JJ.