The STATE of Texas

v.

**Kimberly FORD, Appellee**

**NO. PD-1299-16**

Court of Criminal Appeals of Texas.

Delivered: September 20, 2017

Irma Mendoza Sanjines, Wilson Plaza West, Ste. 504, P. O. Box 4005, Corpus Christi, TX, 78469–4005, for Appellee.

Douglas K. Norman, Assistant District Attorney, 105th Judicial District of Texas, 901 Leopard, Room 206, Corpus Christi, Texas 78401, Stacey Soule, Austin, TX, for the State.

Keller, P.J., delivered the opinion of the Court in which Keasler, Hervey, Richardson, Yeary, and Keel, JJ., joined.

We consider whether a police officer had probable cause to arrest a customer for theft from a store (for concealing items in her purse) when she had not yet exited the store and when she claimed, after being

confronted by the officer, that she was going to pay for the items she had taken. We conclude that the officer had probable cause to arrest.

## I. BACKGROUND

### A. Trial

Appellee was indicted for possession of methamphetamine. The drugs were seized from her purse at a Dollar General store during a theft investigation. Appellee filed a motion to suppress the drugs, and the police report of the incident was admitted at the suppression hearing.[1]

According to the police report, a Dollar General store employee reported that a customer in the store was concealing store merchandise in her purse and jacket. Upon arriving at the store, the responding police officer met with the employee who made the report. The employee told the officer that the customer in question was in the northeast corner of the store, and she described the customer as a "white female with blond hair" wearing "blue jeans and a light blue shirt." The officer went to that part of the store and encountered appellee, who met the employee's description exactly.

The officer informed appellee that she had been seen concealing items in her purse. Appellee responded that she had put items in her purse, but she was not done shopping, and she was going to pay for the items before she left. The officer noticed that appellee had a shopping cart and that there were items from the store in the cart that were not in her purse.[2] The

purse was in the child seat of the shopping cart and was covered by a blue jacket.

The officer picked up the blue jacket and discovered that the purse was zipped up and full of merchandise. Upon removing the store items from the purse, the officer discovered six small baggies of methamphetamine and two pills later identified as hydrocodone/ibuprophen. The store employee printed a receipt for the store items in the purse, and the total price was $75.10. Appellee was placed under arrest for theft over $50. She was later booked into jail on charges of theft and possession of controlled substances.

At the suppression hearing, the trial court observed that appellee "never actually tried to leave the store with the property." The trial court acknowledged that "theft may be complete without the actual removal of property" but then concluded that a theft had not occurred here because appellee "was still shopping." The trial court further stated that it was left "with a narrative that is hearsay upon hearsay. There's no one here to vouch for the credibility of the information." The trial court acknowledged that appellee "had some items in the basket [shopping cart] and some items in a purse that was zipped up and concealed." But the trial court determined that there was insufficient evidence that appellee intended to steal the items because she never tried to leave the store with the items, she did not flee when approached, she did not try to hide anything, and she indicated that she was going to pay for the items. Consequently, the trial court concluded that "the officer acted prematurely in contacting her in the middle of

---

1. This report was the only evidence because the arresting officer was unavailable to testify due to an injury, and the trial court was unwilling to grant a continuance. The trial court admitted the report over appellee's objection.

2. The officer's report stated, "Kimberly had other items in the shopping cart proving she does know the proper way to carry items around the store. It also showed that she was intending on paying for some items while concealing others."

the store and asking about items that she placed in a purse, whether zipped or unzipped" and that inferring an intent to steal was "just too big a leap at this point, considering her cooperation." The trial court also stated that it "question[ed] the reliability of the information contained within the report provided by [the store employee] to the officer" and "there not being anyone to substantiate the information [the store employee] gave." The trial court granted appellee's motion to suppress.

The trial court's written findings of fact and conclusions of law were as follows:

## I. FINDINGS OF FACT

1. On January 9, 2013, a store employee of the Dollar General Store at Waldron and Glenoak in Corpus Christi, Nueces County, Texas called Corpus Christi Police Department after becoming suspicious that Defendant was shoplifting.

2. When the police officer arrived, he found Defendant inside the store shopping.

3. When stopped by the officer, Defendant had not left the store.

4. When stopped by the officer, Defendant had not passed the checkout area of the store.

## II. CONCLUSIONS OF LAW

1. The officer did not have reasonable suspicion to believe that Defendant had committed a crime at the time he stopped the Defendant and searched her purse.

2. The officer did not have probable cause to arrest Defendant and to search her purse.

3. The State did not meet its burden to show that a crime had occurred.[3]

## B. Appeal

The State's appeal addressed two interactions between appellee and the police officer: (1) the conversation between the officer and appellee, and (2) the search of appellee's purse. The State contended that the conversation was part of a consensual encounter. In the alternative, the State contended that the officer had reasonable suspicion to stop appellee to question her about a possible theft. Regarding the search, the State contended that the totality of the circumstances, including the employee's report and the officer's conversation with appellee, gave rise to probable cause to arrest. The State further argued that, because the officer had probable cause to arrest, the search was a valid search incident to arrest. The State also claimed that the trial court's findings on the motion to suppress were incomplete and needed supplementation.

The court of appeals rejected the State's claim that the conversation was part of a consensual encounter but agreed with the State that the police officer had reasonable suspicion to stop appellee to ask her questions.[4] Consequently, the court of appeals held that the trial court erred in concluding that the officer lacked reasonable suspicion to conduct a stop.[5]

Next, the court of appeals addressed whether the trial court erred in concluding that the officer lacked probable cause to arrest.[6] The court of appeals recognized

3. *See also State v. Ford*, No. 13-15-00031-CR, 2016 WL 4939375, *2, 2016 Tex. App. LEXIS 10139, *5 (Tex. App.—Corpus Christi Sept. 15, 2016) (not designated for publication).

4. *Id.* at *3–4, 2016 Tex. App. LEXIS 10139 at *8-10.

5. *Id.* at *3–4, 2016 Tex. App. LEXIS 10139 at *10.

6. *Id.*

that the carrying away of property is not an element of theft in Texas.[7] Nevertheless, the court noted appellee's statement that she was going to pay for the items in her purse before she left the store, and the court said, "Nothing else in the record indicates any actions or statements by Ford indicating that she was attempting to appropriate the items with an intent to deprive Dollar General of the merchandise, as she had not left the store and also had other items in a shopping cart that she intended to purchase."[8] The court of appeals also stated, "The only evidence introduced by the State to support its arguments was [the officer's] police report and narrative, which the trial court referenced in its ruling by expressly finding that the reliability and accuracy of the information given by [store employee] to [the officer] regarding the 'items and information' contained within [the officer's] report was questionable."[9] Based on these remarks, the court of appeals held that the trial court was within its discretion to conclude that the State failed to meet its burden of establishing probable cause to arrest.[10]

The court of appeals also rejected that the State's claim that the trial court's findings needed supplementation: "Here, we conclude that the oral and written findings of fact and conclusions of law made and adopted by the trial [court] are adequate

for this Court to review the trial court's application of law to facts."[11]

## II. ANALYSIS

Under the appellate standard of review on Fourth Amendment claims, an appellate court is to afford almost total deference to the trial court's determination of historical facts, and of application-of-law-to-fact issues that turn on credibility and demeanor, while reviewing *de novo* other application-of-law-to-fact issues.[12] As the prevailing party at the trial level, appellee gains the benefit of deference on factual findings made in her favor.[13] However, whether the facts, as determined by the trial court, add up to reasonable suspicion or probable cause is a question to be reviewed *de novo*.[14]

For an arrest to be justified under the Fourth Amendment, a police officer must have "probable cause to believe that the suspect has committed or is committing an offense."[15] Probable cause is a fluid concept that cannot be readily reduced to a neat set of legal rules.[16] Although the concept evades precise definition, it involves "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized."[17] It is a greater level of suspicion than "reasonable suspicion" but falls far short of a preponderance of the evidence

7. *Id.* at 4, 2016 Tex. App. LEXIS 10139 at 11.

8. *Id.* at *4, 2016 Tex. App. LEXIS 10139 at *12.

9. *Id.*

10. *Id.* at *1, 2016 Tex. App. LEXIS 10139 at *3

11. *Id.* at *2 n.3, 2016 Tex. App. LEXIS 10139 at *5 n.3.

12. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

13. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815-16 (Tex. Crim. App. 2011).

14. *Byram v. State*, 510 S.W.3d 918, 923 (Tex. Crim. App. 2017).

15. *Virginia v. Moore*, 553 U.S. 164, 173, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008).

16. *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009).

17. *Id.*

standard.[18] If an officer has probable cause to arrest, a search incident to arrest is valid if conducted immediately before or after a formal arrest.[19]

◼ Appellee was suspected of committing the offense of theft. Theft occurs when a person "unlawfully appropriates property with intent to deprive the owner of the property."[20] "Appropriate" means, among other things, "to acquire or otherwise exercise control over property other than real property."[21] In *Hill v. State*, we recognized that a customer of a store can exercise control over property with an intent to deprive, even if the customer has not yet left the store with the property.[22] In that case, the defendant did so by concealing the property (a handgun) underneath his shirt.[23] In *Groomes v. United States*, the District of Columbia Court of Appeals addressed a fact situation very much like the one confronting us today, where the defendant had some items in a shopping cart and other items concealed in her purse.[24] The DC court found the facts sufficient to establish larceny (an equivalent of modern theft) even though the defendant had not yet left the store:

> It was established that the items once removed from the shelf were immediately secreted in her purse. At the time, the cart used by appellant was about half full of groceries. By concealing the articles in her purse separate and apart from the other goods in the cart, appellant acquired complete and exclusive control over the property. It is well settled that the elements of a taking and asportation are satisfied where the evidence shows that the property was taken from the owner and was concealed or put in a convenient place for removal. The fact that the possession was brief or that the person was detected before the goods could be removed from the owner's premises is immaterial.[25]

The trial court and the court of appeals in the present case both seemed to recognize that it was not necessary for appellee to take the items out of the store for her to commit a theft. In fact, appellee's own admission that she placed items inside her purse was sufficient to show an exercise of control over those items so as to constitute "appropriation."

◼ Appropriation by itself does not establish theft—there must also be an intent to deprive the owner of the property, and both courts below concluded that the officer did not have probable cause to believe that she had the requisite intent. Nevertheless, the officer had knowledge of at least four undisputed facts that supported a conclusion that appellee exercised control over the items in her purse with the requisite intent to deprive:

1. A store employee reported that appellee was concealing store items in her purse.

2. Appellee admitted to the officer that she placed some store items in her purse.

3. The store cart appellee was using contained other items from the store that were not in her purse.

18. *Id.*

19. *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999).

20. Tex. Penal Code § 31.03(a).

21. *Id.* § 31.01(4).

22. 633 S.W.2d 520, 521 (Tex. Crim. App. 1981).

23. *Id.*

24. 155 A.2d 73, 75 (D.C. App. 1959).

25. *Id.*

4. Appellee's purse was covered by a jacket.

The fact that some items were visible in the cart while others were concealed in appellee's purse caused the arresting officer to infer that appellee intended to pay for some items while concealing others. The DC court in *Groomes* seems to have reached a similar conclusion, and we agree with the inference. Also, the police officer could have reasonably believed that the jacket covering the purse was designed to further conceal the items.

 The court of appeals indicated that the trial court could doubt or disbelieve the reliability of the information given by the employee.[26] But as the court of appeals itself held, the employee's report was sufficiently reliable to establish reasonable suspicion.[27] The employee's report was then corroborated by appellee's admission that she had placed items in her purse, and other circumstances—other items visible in the cart and the jacket covering the purse—further reinforced the conclusion that appellee intended to deprive the store of the property that she had concealed. Moreover, the question is not whether the employee might subsequently be a credible witness in court for the purpose of proving beyond a reasonable doubt that appellee committed a crime. The question is whether the officer could rely upon the employee's report as one of several factors for determining probable cause. The answer to that ques-

**26.** The court of appeals did not hold that the trial court disbelieved the police officer. *See State v. Ross*, 32 S.W.3d 853, 857 (Tex. Crim. App. 2000) ("The trial court, however, was free to disbelieve all of the agent's testimony. As the sole trier of fact and judge of credibility, the trial court was not compelled to believe the agent's testimony, even if uncontroverted, based on credibility and demeanor. Because the evidence, if believed, would compel a denial of the motion to suppress, the record supports the second theory that the trial court did not find the agent's testimony to be credible based on demeanor, appearance, and tone."). Such a holding would not have been consistent with the court of appeals's determination that the officer had reasonable suspicion to conduct a stop. It also would not have been consistent with the court of appeals's refusal to allow a supplementation of the written findings of fact. Although the court of appeals's opinion is less than clear on this point, it appears that the court inferred from the trial court's statements during the hearing, which it referred to as oral findings, that the trial court credited the police report with accurately reciting what information the officer received during his investigation. We think that the court of appeals's implicit inference on this point is a fair reading of the record.

Judge Walker's dissent concedes that the officer had probable cause to arrest but contends that the trial court's suppression ruling

can be upheld on the basis that the officer lacked reasonable suspicion to stop appellee. We note that appellee did not file a cross-petition complaining about the court of appeals's reasonable suspicion holding. *See* Tex. R. App. P. 68.2(b) ("Even if the time specified in (a) has expired, a party who otherwise may file a petition may do so within 10 days after the timely filing of another party's petition."). Moreover, the dissent's contention with respect to reasonable suspicion is that the trial court was free to disbelieve the credibility of the store employee's hearsay statement. But the existence of reasonable suspicion does not turn on whether the store employee's hearsay statement should ultimately be believed by the trial court but on whether the officer had sufficient articulable facts to reasonably conclude that a crime was being committed. *See Furr v. State*, 499 S.W.3d 872, 878 (Tex. Crim. App. 2016). The store employee's statement to the officer that appellee was concealing items in her purse gave the officer sufficient articulable facts to conduct an investigation.

**27.** *See Derichsweiler v. State*, 348 S.W.3d 906, 915 & n.34 (Tex. Crim. App. 2011) (Information from "a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable" for purpose of establishing reasonable suspicion, even if the information did not supply probable cause.).

tion is "yes," because citizen informants who identify themselves "are considered inherently reliable."[28] Moreover, a court cannot simply discount the information given by an informant without looking at the circumstances that corroborate the information.[29]

The court of appeals also pointed to appellee's statement to the officer that she was not done shopping and was going to pay for the items. Although a suspect's innocent explanation is relevant information to be considered in a probable cause determination,[30] numerous courts have held that a police officer is generally not required to credit an accused's innocent explanation when probable cause to arrest is otherwise apparent.[31]

We conclude that the courts below erred in concluding that the police officer lacked probable cause to arrest appellee. We reverse the judgments of the courts below and remand the case to the trial court.

Walker, J., filed a dissenting opinion in which Alcala, J., joined.

Newell, J., concurred.

Walker, J., joined by Alcala, J., filed a dissenting opinion.

The Court of Appeals held that Officer Rogers did not have probable cause to

28. *State v. Duarte*, 389 S.W.3d 349, 357 & n.35 (Tex. Crim. App. 2012).

29. *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (A court must look at the totality of the circumstances in determining the existence of probable cause and not use a divide-and-conquer approach.). *See also Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983) ("Urquhart's credibility and reliability are established because he was a named informant, and because he gave detailed information about Barnes' activities which was substantially corroborated by independent police investigation."). *Cf. Dixon v. State*, 206 S.W.3d 613, 620 (Tex. Crim. App. 2006) ("Because the informant's veracity and basis of knowledge were sufficient, by themselves, to establish probable cause, Agent Gray's corroboration of details was, in the words of Professor LaFave, 'only the frosting on the probable cause cake.' ").

30. See *Miller v. Sanilac County*, 606 F.3d 240, 249 (6th Cir. 2010) ("A suspect's satisfactory explanation of suspicious behavior is certainly a factor in determining whether probable cause exists.") (brackets and internal quotation marks omitted).

31. *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) ("Officers ... are not required to credit a suspect's explanation if the officers reasonably believe they still have probable cause to make the arrest despite the explanation."); *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) ("The fact that an innocent explanation may be consistent with the facts alleged ... does not negate probable cause and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.") (bracketed alteration removed, citations omitted); *Cox v. Hainey*, 391 F.3d 25, 32 n.2 (1st Cir. 2004) ("Hainey had no obligation to give credence to these self-serving statements. A reasonable police officer is not required to credit a suspect's story."); *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused. In fact, law enforcement is under no obligation to give any credence to a suspect's story or alibi nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.") (citations, brackets, and internal quotation marks omitted); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) (Officers "were not required to forego arresting Marx based on initially discovered facts showing probable cause simply because Marx offered a different explanation."); *Michel v. Smith*, 188 Cal. 199, 208, 205 P. 113, 117 (1922) ("The guiltiest of felons have made the same protest. It is a safer rule, however, for courts to follow in such cases, to decide whether probable cause is, or is not, shown, than to rely upon the protestations of innocence of the persons arrested.").

arrest Appellee. Today, a majority of this Court reverses by concluding that there was probable cause. On this matter, I wholeheartedly agree. Based on several facts, Officer Rogers had probable cause to arrest Appellee: (1) Appellee admitted to the officer that she placed some store items in her purse; (2) upon inspection, Officer Rogers observed store items in Appellee's purse, which was zipped and covered by a jacket; and (3) the store cart Appellee was using contained other items from the store that were not in her purse. I agree that this is enough, and in this regard I have no objections with the majority's analysis. Through his observations and interactions with Appellee, Officer Rogers discovered enough facts to support probable cause.

However, whether Officer Rogers had probable cause to arrest Appellee is of no consequence unless he had reasonable suspicion to stop her in the first place. The Trial Court concluded that Officer Rogers had neither reasonable suspicion nor probable cause. The Court of Appeals disagreed and found reasonable suspicion, but it upheld suppression because of a lack of probable cause. I disagree on both points. In my view, in addition to its handling of probable cause as discussed above, the Court of Appeals erred by misapplying the standard of review in its discussion of reasonable suspicion. Had it correctly done so, it would have upheld the Trial Court's ruling on that basis. Nevertheless, it ultimately came to the same decision to uphold the grant of Appellee's motion to suppress. Accordingly, I would affirm the judgment of the Court of Appeals, even though I do not endorse its reasoning.

The standard of review of a trial court's ruling on a motion to suppress bears repeating:

[A]s a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. This Court may exercise its discretion to review *de novo* these decisions by the intermediate appellate courts.

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (internal citations omitted); *see also Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010) (stating same, specifically for review of rulings on motions to suppress). Additionally:

Appellate courts view the evidence in the light most favorable to the trial judge's ruling—whether he grants or denies the motion. The winning side is afforded the "strongest legitimate view of the evidence" as well as all reasonable inferences that can be derived from it. We review a trial judge's application of search and seizure law to the facts *de novo*, and will affirm his ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case.

*State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

At the hearing on the motion to suppress, neither Officer Rogers nor his fellow responding officer, Tamez, testified. There was also no testimony from the store clerk, Maria Molina. *State v. Ford*, No. 13-15-00031-CR, 2016 WL 4939375, at

*1 (Tex. App.—Corpus Christi-Edinburgh Sept. 15, 2016, mem. op., not designated for publication). There were no affidavits, even though a trial court may decide the motion with only affidavits. *See* Tex. Code Crim. Proc. Ann. art. 28.01 § 1(6) (West 2006 & Supp. 2016). Instead, the only evidence introduced by the State was a portion of Officer Rogers's written report. *Ford*, 2016 WL 4939375, at *1.

The Trial Court admitted the portion of the report into evidence and ultimately granted Appellee's motion to suppress. *Id.* at *2. After granting the motion, the Trial Court stated:

> And just for purposes of the record, the Court questions the reliability of the information contained within the report provided by Maria Molina to the officer. I question the reliability of the information that is contained with regard to the items and information. And I find insufficient evidence to support a charge of theft under the facts and circumstances as presented in the narrative. And the Court rightfully considers the accuracy, there not being anyone to substantiate the information that Maria Molina gave.

*Id.* The Trial Court's written findings of fact were that:

1. On January 9, 2013, a store employee of the Dollar General Store at Waldron and Glenoak in Corpus Christi, Nueces County, Texas called [the] Corpus Christi Police Department after becoming suspicious that [Appellee] was shoplifting.

2. When the police officer arrived, he found [Appellee] inside the store shopping.

3. When stopped by the officer, [Appellee] had not left the store.

4. When stopped by the officer, [Appellee] had not passed the checkout area of the store.

*Id.* Based on the evidence and the findings of fact, the Trial Court's conclusions of law included a statement that the officer did not have reasonable suspicion to believe that Appellee had committed a crime at the time he stopped Appellee and searched her purse. *Id.* As stated above, while not included in the findings of fact, the Trial Court did state, "And just for purposes of the record, the Court questions the reliability of the information contained within the report provided by Maria Molina to the officer. I question the reliability of the information that is contained with regard to the items and information." *Id.* It is apparent that the facts in the police report that tended to establish reasonable suspicion carried little weight with the Trial Court, and that is why the Trial Court concluded that the evidence did not establish reasonable suspicion.

The findings are part of the record, and the Court of Appeals was bound to give those findings "almost total deference." *See Guzman*, 955 S.W.2d at 89. Nevertheless, a reading of that Court's opinion shows that it gave virtually no deference to the Trial Court's findings. Although it quoted the findings in the "Background" section of its opinion, it appears that the Court of Appeals applied the law to only the facts as presented in the unsworn police report to find that reasonable suspicion existed. The relevant portion of the Court of Appeals's opinion, applying the "facts" to the law, states:

> The trial court found that Officer Rogers responded to the Dollar General based on a report from a store employee, who suspected Ford of stealing merchandise. Morever, upon arriving at the store, the employee provided Officer Rogers with a description of the suspect that fit Ford's description "exactly." Based on these facts, we conclude that the trial court erred in concluding that Officer Rogers did not possess reason-

able suspicion to detain Ford because Officer Rogers had specific articulable facts from the store employee that would lead him to reasonably conclude that Ford had engaged in criminal activity inside of the store.

*Ford*, 2016 WL 4939375, at \*4. But "these facts" as described by the Court of Appeals omit the oral finding that the information provided by the store employee, Molina, was of questionable reliability. In other words, Molina's information was not credible. It should be noted that when a trial judge admits hearsay evidence, there is nothing in our law that requires the judge to treat the hearsay evidence as credible. As the sole trier of fact, the Trial Court was free to disbelieve some, all, or none of the information provided by Molina, even uncontroverted hearsay. *State v. Ross*, 32 S.W.3d 853, 857 (Tex. Crim. App. 2000). Appellate courts are bound to afford "almost total deference" when it comes to matters of credibility on determinations of historical fact and even on mixed questions of fact and law if such questions are based on an assessment of credibility or demeanor. *Guzman*, 955 S.W.2d at 89.

Furthermore, this case does not appear to be the type of case where the trial court's findings are not given due deference as was the case in *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000). In that case, we declined to give the trial court findings "almost total deference" where there was indisputable visual evidence to the contrary. *Id.* at 332. This case is different from *Carmouche*. Here, the evidence is a page from a non-testifying officer's unsworn report. There was no witness to authenticate that the page was actually from Officer Rogers's report. There was no witness to testify that the page accurately reflected what Officer Rogers saw, heard, or experienced on the day in question. It was unsworn, it was hearsay, and the critical information for reasonable suspicion analysis, the information supposedly told to Officer Rogers by Maria Molina, was itself hearsay within hearsay. The information supposedly provided by Molina, reflected only in the unsworn report, can hardly be called "indisputable" evidence in the same class as the recorded footage in *Carmouche*.

Accordingly, the Court of Appeals erroneously analyzed reasonable suspicion in light of only the unsworn report, instead of in the light most favorable to the Trial Court's ruling. The Trial Court concluded that the stop was made absent reasonable suspicion. When a stop is effectuated absent reasonable suspicion, the fruit of the illegal stop is inadmissible. Virtually all of the State's evidence was obtained after the stop and was, therefore, fruit of that illegal stop. But even though the Court of Appeals concluded that there was reasonable suspicion, it upheld the Trial Court's suppression ruling based on a lack of probable cause. Because I agree with the Court of Appeals's decision to uphold the Trial Court's ruling, I would affirm the judgment of the Court of Appeals, even though I disagree with the Court of Appeals's analysis. Because this Court does not do so, I respectfully dissent.