**Opinion filed February 21, 2020**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-18-00001-CR & 11-18-00002-CR

_____

## THE STATE OF TEXAS, Appellant

## V.

## TERRY DARYL WHITMAN, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause Nos. CR49338 & CR49339**

## O P I N I O N

In Cause No. 11-18-00001-CR (Trial Court Cause No. CR49338), Appellee, Terry Daryl Whitman, was charged with the offense of possession of a controlled substance. In Cause No. 11-18-00002-CR (Trial Court Cause No. CR49339), he was charged with the offense of forgery of a government record. In each cause, Appellee filed a motion to suppress the evidence obtained as a result of the search of his vehicle that occurred after his arrest for theft. After conducting a hearing on

the motion to suppress, the trial court granted the motion. In a single issue, the State appeals the trial court's ruling on the motion to suppress. We affirm.

*Background Facts*

On February 18, 2017, Midland Police Detective Derrick Whitefield responded to a report of a shoplifting in progress at Kohl's in Midland. Dispatch informed him that there were two suspects, a male in a white shirt (Appellee) and a female in a pink shirt. Detective Whitefield testified that dispatch informed him that the male was concealing items in a bag and that the female was working with the male. When Detective Whitefield arrived at the store's parking lot, he observed a female in a pink shirt exit the store and get into a red car. Dispatch informed Detective Whitefield that this was the female that was suspected of shoplifting.

Dispatch then informed Detective Whitefield that the male subject concealed a bag of merchandise under a chair in the electronics section. Detective Whitefield observed Appellee exit the store a short time later and enter the red car. Detective Whitefield pulled his patrol vehicle behind the red car, and he made contact with its occupants. The loss prevention officer at Kohl's, Reno Moffett, then told Detective Whitefield what he had observed inside the store, including the fact that he was able to retrieve all of the "stolen" merchandise, which totaled $1,447.45 and which remained inside the store.

Detective Whitefield made the decision to arrest Appellee and the female suspect for theft based on the matters reported to him by Moffett. As a result of a subsequent search of the red car incident to Appellee's arrest, police officers found methamphetamine, a methamphetamine pipe, and a fraudulent temporary driver's license for Appellee.

Appellee filed a motion to suppress all evidence seized by the police. At the hearing on the motion to suppress, the State called Detective Whitefield and Midland Police Officer Hannah Yoxsimer as witnesses. Appellee took the position at the

2

hearing that the police officers did not have probable cause to arrest him for theft. Appellee focused on the lack of verification by Detective Whitefield of the information relayed to him by the loss prevention officer. Appellee also asserted that his motive was subject to speculation since he did not remove any items from the store.

In response, the State asserted that the officers did not have to personally observe the offense being committed but that they could rely on reasonably trustworthy information provided by others to make a probable cause determination. The State additionally asserted that merchandise did not have to leave the store in order for a theft to occur. The trial court expressed a concern at the hearing that the items had not been appropriated if they had not been removed from the store. The hearing on the motion to suppress concluded with the trial court inviting the attorneys to submit authority for the trial court to consider. The trial court subsequently entered an order granting Appellee's motion to suppress.

*Analysis*

We note at the outset that the State has limited rights of appeal in criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (West 2018). The State is entitled to appeal a court order that grants a motion to suppress if jeopardy has not attached and the elected prosecutor certifies to the trial court that the appeal is not taken for the purpose of delay and that the suppressed evidence is of substantial importance to the case. *Id.* art. 44.01(a)(5). The elected district attorney for Midland County personally signed the notice of appeal certifying the matters required to invoke this court's jurisdiction to review the trial court's interlocutory order granting the motion to suppress. *See State v. Redus*, 445 S.W.3d 151, 154–55 (Tex. Crim. App. 2014).

In its sole issue in each cause, the State challenges the trial court's determination that Officer Whitefield lacked probable cause to arrest Appellee. The State's issue on appeal is as follows:

> The police officer received information from a credible source that the Appellee was hiding items within the store to be taken out later without purchase. A completed theft does not require that items must be taken out of the store. Probable cause exists when there is a reasonable ground for belief of guilt. Did the trial court err in finding no probable cause to arrest?

The State's challenge to the trial court's finding of no probable cause is understandable because probable cause to arrest was the focus of the hearing on the motion to suppress. Furthermore, the trial court's determination that there was no probable cause was the basis for the order granting the motion to suppress. As set forth below, Appellee has presented an alternative legal contention premised on Article 14.01 of the Texas Code of Criminal Procedure. *See* CRIM. PROC. art. 14.01 (West 2015). Appellee asserts that this provision supports the trial court's decision to grant the motion to suppress.

The State relies on *State v. Ford*, 537 S.W.3d 19 (Tex. Crim. App. 2017), to support its argument that Appellee's arrest was supported by probable cause. *Ford* also involved an alleged shoplifting. 537 S.W.3d at 20–21. A police officer received a report from a Dollar General employee that a customer was concealing merchandise in her purse and jacket. *Id.* The officer made contact with the customer inside of the store while she was still shopping. *Id.* The trial court in *Ford* determined that the officer did not have probable cause to arrest the defendant for theft because the defendant was still shopping when the officer encountered her. *Id.* at 21–22.

The Texas Court of Criminal Appeals concluded in *Ford* that the officer had probable cause to arrest the defendant for theft. *Id.* at 24–25. The court cited cases

for the proposition that a store customer can commit a theft before leaving the store with the property. *Id.* (citing *Hill v. State*, 633 S.W.2d 520, 521 (Tex. Crim. App. 1981); *Groomes v. United States*, 155 A.2d 73, 75 (D.C. App. 1959)). The court concluded that the defendant's act of placing items in her purse constituted an appropriation. *Id*. at 24 (citing TEX. PENAL CODE ANN. §§ 31.01(4), .03(a) (West 2019)). Further, the court determined that the defendant possessed the requisite intent to deprive. *Id*. at 24–25. The State relies on *Ford* to assert that the officers in this case had probable cause to arrest Appellee for theft because he had completed a theft inside the store.

When reviewing a trial judge's ruling on a suppression motion, the trial judge's factual determinations are afforded almost total deference, provided that those determinations are supported by the record. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). As a general rule, appellate courts view the evidence in the light most favorable to the trial judge's ruling, regardless of whether the judge granted or denied the suppression motion. *Id.* (citing *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). Thus, courts afford the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id.* (quoting *Garcia–Cantu*, 253 S.W.3d at 241). Courts afford great deference to the trial judge's rulings on issues that involve mixed questions of law and fact, provided that those rulings depend upon evaluations of credibility and demeanor. *Id.* (citing *Guzman*, 955 S.W.2d at 89). But when credibility and demeanor are irrelevant, courts conduct a de novo review, and all purely legal questions are reviewed de novo. *Id.* (citing *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004)). Whether the facts, as determined by the trial court add up to probable cause is a question to be reviewed de novo. *Ford*, 537 S.W.3d at 23 (citing *Byram v. State*, 510 S.W.3d 918, 923 (Tex. Crim. App. 2017)).

5

The trial court entered detailed findings of fact and conclusions of law, which provided as follows:

1. On February 18, 2017 at approximately 4:22 p.m., Midland Police Officer Whitefield and Officer Yoxsimer were dispatched to Kohl's regarding a shoplifting in progress.

2. While [en] route to Kohl's, dispatch advised that 2 people were involved, a male in a white shirt and a female in a pink shirt.

3. Dispatch also advised that merchandise was staged by the north fire exit.

4. As Officer Whitefield was approaching Kohl[']s, Officer Whitefield observe[d] a female in a pink shirt was exiting the store.

5. Dispatch further advised the female had gotten into a red car.

6. Officer Whitefield observed the female in the pink shirt who had exited Kohl's get into a red car.

7. Dispatch advised the male had concealed merchandise under a chair in the electronics area and then Officer Whitefield observed a male wearing a white shirt exit the store and enter the same red car.

8. Neither suspect appeared to be carrying merchandise out of Kohl's.

9. Officer Whitefield had reasonable suspicion to believe the female in the pink shirt and the male in the white shirt who entered the red car were the people who had been reported to be shoplifting, and thereby Officer Whitefield had reasonable suspicion to detain them.

10. Officer Whitefield parked his vehicle behind the red car.

11. Officer Whitefield identified the female as Michelle Whitman; she was identified by driver's license.

12. The male identified himself as Terry Whitman and gave his date of birth, but stated he did not have an ID.

13. Both Michelle and Terry appeared nervous, and both asked why they were being detained by police[.]

14. Kohl's loss prevention employee Reno Moffett then came out of the store and told Officer Whitefield that he believed Terry and Michelle Whitman had used their cell phones inside the store to communicate and coordinate their efforts. Moffett said that, based on Terry Whitman's actions inside the store after Michelle's departure, he believed that Michelle had alerted Terry to police presence in the parking lot.

15. The loss prevention employee of Kohl[']s, Reno Moffit [sic], identified Terry and Michelle Whitman as the people who were suspected of shoplifting and said the value of the property was $1447.45.

16. Moffett also told Officer Whitefield that all the merchandise had been recovered inside the store, and that it was valued at $1,447.45.

17. Neither Officer Whitefield nor Officer Yoxsimer conducted any independent investigation of the alleged theft.

18. Neither officer attempted to examine the cell phones of the Whitman's [sic]. Neither officer entered Kohl's or viewed where the merchandise had been left by the Whitman's [sic], or photographed the merchandise, or watched videos from Kohl's security cameras.

19. After visiting with Moffett, the officers removed Michelle Whitman and Terry Whitman from their vehicle.

20. Terry and Michelle Whitman were under arrested [sic] for theft. Terry Whitman was handcuffed and placed in Officer Whitefield's car. Michelle was handcuffed and placed in Officer Yoxsimer's car.

21. Officer Whitefield searched the red vehicle based on search incident to arrest and inventory.

22. A black bag containing scales and methamphetamine was found in the driver's side map pocket[.]

23. A temporary driver's license for Terry Whitman was found in the driver's side map pocket.

24. The number on the temporary driver's license did not return to Terry Whitman.

25. Michelle had been sitting in the driver's seat and Terry had been seated in the front passenger's seat.

26. A methamphetamine smoking pipe was found under the front passenger seat.

27. The evidence is that the merchandise had not been moved through any checkout.

28. Officer Whitefield and Officer Yoxsimer lacked probable cause to believe that Michelle Whitman and Terry Whitman "unlawfully appropriated" property of Kohl's, with the intent to "deprive" Kohl's of its property, within the meaning of Sections 31.01 and 31.03, Texas Penal Code.

29. Because the officers lacked probable cause to arrest, the arrests of Michelle Whitman and Terry Whitman were unlawful, in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and Article 1, Sections 9 and 19 of the Texas Constitution, and Art. 1.04, 1.06, and 14.01 Texas Code of Criminal Procedure.

30. Because the arrests were unlawful, the attendant search and impound inventory of the Whitman vehicle was likewise unlawful.

31. As a result of the unlawful arrest and search, all evidence obtained as a result thereof is inadmissible, and must be suppressed, pursuant to Art. 38.23, Texas Code of Criminal Procedure.

When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, the defendant initially bears the burden of proof. *State v. Martinez*, 569 S.W.3d 621, 623–24 (Tex. Crim. App. 2019) (citing *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim. App. 1986), *disavowed on other grounds by Handy v. State*, 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006)). The defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant. *Id.* at 624 (citing *Russell*, 717 S.W.2d at 9–10). If the defendant meets this burden, the burden then shifts to the State to show the reasonableness of

the search or seizure. *Id.* It is undisputed in this case that Appellee was arrested without a warrant.

"A police officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question, *and* the arrest falls within one of the exceptions set out in the Code of Criminal Procedure." *Id.* at 628 (emphasis added) (citing *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002)). Thus, the State must show compliance with one of the statutory exceptions for a warrantless arrest in addition to the requirement that the warrantless arrest is supported by probable cause. *See id.* at 628–30.

As noted previously, the State relies on *Ford* to assert that Detective Whitefield had probable cause to arrest Appellee for theft. The Texas Court of Criminal Appeals described the concept of probable cause in the following terms:

> For an arrest to be justified under the Fourth Amendment, a police officer must have "probable cause to believe that the suspect has committed or is committing an offense." Probable cause is a fluid concept that cannot be readily reduced to a neat set of legal rules. Although the concept evades precise definition, it involves "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized." It is a greater level of suspicion than "reasonable suspicion" but falls far short of a preponderance of the evidence standard. If an officer has probable cause to arrest, a search incident to arrest is valid if conducted immediately before or after a formal arrest.

*Ford*, 537 S.W.3d at 23–24 (footnotes omitted). Probable cause for a warrantless arrest may be based on an officer's prior knowledge and personal observations, and an officer may rely on reasonably trustworthy information provided by another person in making the overall probable cause determination. *Martinez*, 569 S.W.3d at 628 (citing *Woodard*, 341 S.W.3d at 412). Thus, the officer in *Ford* was permitted

to rely upon the information provided to him by the store employee to determine that probable cause existed to arrest the defendant for theft. 537 S.W.3d at 25–26.

While the circumstances in *Ford* are similar to the facts in this case, we conclude that *Ford* is distinguishable. The defendant in *Ford* placed some items in her purse and other items in her shopping cart. *Id.* at 24. The court concluded that "[t]he fact that some items were visible in the cart while others were concealed in [the defendant's] purse caused the arresting officer to infer that [the defendant] intended to pay for some items while concealing others." *Id.* at 25.

In this case, there is no evidence that Appellee placed items in a shopping cart separate from the merchandise that he "staged" by an exit or concealed under a chair. Furthermore, there is no evidence that Appellee placed the items in anything other than "a bag." There is no evidence that the bag belonged to Appellee or if it was provided by the store to customers for shopping. Unlike the circumstances in *Ford*, there is no evidence in this case of Appellee placing merchandise in an enclosure that he owned so as to be sufficient to show an exercise of control and constitute an appropriation, and there is no evidence that he intended to pay for some items but not others to show an intent to deprive. While there is evidence of concealment, there is no evidence to support why Moffett reported to dispatch that he believed that Appellee and the female were shoplifting. On this record, there is no evidence to support that Detective Whitefield had probable cause to believe that Appellee committed theft.

Moreover, Chapter Fourteen of the Code of Criminal Procedure sets out the statutory exceptions for an officer to make a warrantless arrest. Appellee asserts on appeal that the police officers in this case were not permitted to make a warrantless arrest of Appellee under Article 14.01 because Appellee did not commit an offense in the presence or in view of the police officers. *See* CRIM. PROC. art. 14.01 (West 2015). Appellee's reliance on Article 14.01 is understandable because it appears to

10

be the statutory exemption for a warrantless arrest that is most applicable to the facts in this case.[1] We further note that the State did not cite any of the statutory exemptions at the hearing on the motion to suppress. *See Martinez*, 569 S.W.3d at 630 (noting that the State has the burden to show a statutory exception to the warrant requirement).

Appellee did not cite Article 14.01 in his motion to suppress, and it was not discussed at the hearing on the motion to suppress. Appellee cited Article 14.01 for the first time in his appellate brief. If Appellee had lost on the motion to suppress, he likely would have been precluded from relying on Article 14.01 as a basis for challenging the trial court's order because he would not have preserved error on the complaint as required by TEX. R. APP. P. 33.1. *See Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015) (Fourth Amendment complaint not preserved for appellate review as required by Rule 33.1). However, a different rule applies because Appellee prevailed on the motion to suppress. If the trial court's ruling is correct on any theory of law applicable to that ruling and is reasonably supported by the record, we uphold that decision. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *see Gallups v. State*, 151 S.W.3d 196, 199 (Tex. Crim. App. 2004) (noting that this rule is "well-settled"). "Our task, then, is to determine whether the trial court could have reasonably [granted Appellee's] motion to suppress given the record evidence and given the applicable federal and state law." *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

By its express terms, a warrantless arrest under Article 14.01 must be committed within the arresting officer's presence or view. "An offense is deemed to have occurred within the presence or view of an officer when any of his senses afford him an awareness of its occurrence." *Steelman*, 93 S.W.3d at 107 (citing

---

[1]The statutory exception for a warrantless arrest that is set out in Article 14.04 is inapplicable because the alleged theft was not a felony. *See* CRIM. PROC. art. 14.04.

*Clark v. State*, 35 S.W.2d 420, 422 (Tex. Crim. App. 1931)); *see Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Steelman*).

As noted previously, the State asserts that Appellee completed the theft prior to leaving the store. However, there is no evidence or finding that Appellee committed the alleged theft in the presence or view of the arresting officers; the officers were outside the store, and Appellee is alleged to have completed the theft inside the store.[2] In this regard, the trial court found that Moffett told Detective Whitefield that all of the merchandise had been recovered inside the store before Detective Whitefield arrested Appellee for theft. Accordingly, Appellee did not commit the alleged theft in the presence or view of the officers. Furthermore, there is no evidence or finding by the trial court of any of the other statutory exceptions for a warrantless arrest.

The State asserts an alternative ground to justify a search of Appellee's vehicle. The State contends that the police officers had probable cause to search the car for evidence of theft. *See Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017) ("The automobile exception allows for the warrantless search of an automobile 'if it is readily mobile and there is probable cause to believe that it contains contraband.'" (quoting *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009))). Specifically, the State asserts that "[i]t is entirely possible that they could have hidden store merchandise on their persons and made it out of the store." However, the record and findings by the trial court do not support this contention. The trial court found that the police officers searched the vehicle as a search incident to arrest and inventory after the officers arrested Appellee for theft. Furthermore, the trial court specifically found that all of the allegedly stolen merchandise had been

---

[2]The Texas Court of Criminal Appeals did not address Article 14.01 in *Ford*. However, the defendant in *Ford* obviously committed the alleged offense of theft in the officer's presence or view because the officer encountered her in the store with the allegedly stolen merchandise in her possession. *Ford*, 537 S.W.3d at 20–21.

recovered prior to Appellee's arrest and the search of his car. While there is testimony from Detective Whitefield that there may have been stolen merchandise inside of the car, the trial court did not make a finding to this effect. Accordingly, we disagree that the officers conducted a search of the vehicle under the automobile exception.

We overrule the State's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court in each cause.


JOHN M. BAILEY
CHIEF JUSTICE


February 21, 2020

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.