# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00450-CR

**Cristina Belen Gutierrez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 9 OF TRAVIS COUNTY
NO. C-1-CR-18-200719, THE HONORABLE KIM WILLIAMS, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

Following the denial of her motion to suppress evidence and motions to dismiss for failure to disclose evidence, appellant Cristina Belen Gutierrez pleaded no contest to the misdemeanor offense of driving while intoxicated and was sentenced to three days' confinement in the Travis County Jail. In two points of error on appeal, Gutierrez asserts that the trial court abused its discretion by (1) denying her motion to suppress and motions to dismiss and (2) considering the arresting officer's probable-cause affidavit in its denial of Gutierrez's motion to suppress. We will affirm the trial court's judgment.

## BACKGROUND

At the hearing on Gutierrez's motions to suppress and dismiss, the trial court heard evidence that on January 16, 2018, Gutierrez was involved in a single-vehicle accident on Southwest Parkway in Austin. Police officers and firefighters responded to the scene of the

crash, including Officers Jason Pauls and Michael Batham of the Austin Police Department and Captain Scott Barfield of the Oak Hill Fire Department.

Officer Pauls, who led the investigation and arrested Gutierrez, was unavailable to testify at the hearing. However, Pauls was wearing a body camera when he arrived at the scene, and although the view from his camera was obstructed by a jacket that Pauls was wearing at the time, the camera recorded Barfield telling Pauls that a witness to the crash had spoken to Gutierrez and that Gutierrez had admitted to this witness that "she had two drinks." Barfield also told Pauls, "I don't smell anything, I don't see nothing . . . I'm not asking her anything, she doesn't appear to be [inaudible] . . . she's not acting like she's had any drinks or anything . . . ." A copy of the recording of Barfield's conversation with Pauls was admitted into evidence at the hearing, and Barfield testified that he recognized his voice in the recording. However, Barfield also testified that he did not recall any aspects of the investigation, including making the statements in the recording.

Officer Batham assisted Pauls in the investigation. Batham testified that when he arrived at the scene, he "walked up to the actual vehicle that was involved in a collision," observed Officer Pauls and others who were already near the vehicle, and "saw a female," later identified as Gutierrez, "get out of the vehicle." As Batham watched Gutierrez exit the vehicle, he noticed that "she seemed to be disheveled." He recounted, "[S]he kind of leaned against the car, her purse kind of fell from her hand. She seemed disheveled, uncoordinated, as I had seen other people act in the past that had been intoxicated." Batham also testified that Gutierrez "bumped" or "almost bumped" into him as she was walking past him toward Officer Pauls's vehicle and that she momentarily stopped at the witness's car door "for an unknown reason," which Batham described as "another confusing moment" in his interaction with Gutierrez.

2

Pauls indicated to Batham "that he was going to be doing [field sobriety] testing by gesturing with his hand," which Batham understood "to mean that [Pauls] believed that this person had been drinking."[1] While Pauls drove Gutierrez to another location to conduct field sobriety tests, Batham interviewed the witness at the scene, who identified herself as Daniela Hilario. Batham testified that Hilario told him that as she was driving west on Southwest Parkway, "she saw a vehicle backing out of the grassy median and then over through the lanes of traffic to the right shoulder," where the vehicle collided with a guardrail. Hilario also told Batham that she had stopped her vehicle and spoken to Gutierrez, who told her that "she was okay but didn't want police on-scene" and that "she had been drinking with some friends." Hilario confirmed that she had seen Gutierrez in the driver's seat of the vehicle.

After speaking with Hilario, Batham "did [his] administrative work as far as removing the vehicle from the roadway and releasing fire [personnel] from the scene." After that, Batham returned to his vehicle and "drove over to where Officer Pauls was testing" Gutierrez to provide support. Once there, Batham "observe[d] something that was very confusing . . . at the end of [Pauls's] interaction with [Gutierrez]." Specifically, Gutierrez "began walking kind of in, like, a side-to-side manner, kind of—not staggering, but it was an unusual walk." Batham testified, "And she walked toward me, and I didn't really understand what part of the sobriety test she was doing. I thought she was just walking away and I kind of directed her to go back towards Officer Pauls." He added, "She was walking in a manner that was not—it didn't seem like a normal gait. It seemed like she was staggering to some extent;

---

[1] Later in his testimony, Batham agreed with defense counsel's characterization of this hand gesture as "the thumb sticking out, the pinky sticking out, and the other three fingers in, waving it up and down," which Batham testified "meant that [Pauls] believed she may have been drinking and he was gonna go test her."

kind of, like, confused and kind of disoriented, generally." Batham also testified that "it seemed like it took her a little bit to register that she didn't need to be in my area and [she] needed to kind of walk away" in "the other direction." Batham noticed that Gutierrez's "speech seemed a little slurred" when she spoke to him, but he did not notice an odor of alcohol on her breath, which Batham attributed to the wind that day. However, Pauls told Batham that he had noticed an odor of alcohol. When asked if there was anything else that made him think Gutierrez might be intoxicated, Batham referenced Gutierrez's "inability to understand kind of where she was, her loss of balance, her lack of the ability to walk, like her staggering, her general sense of confusion about the situation," and her "getting out of the car in the manner that she did."

Batham's body camera recorded his portion of the investigation, and a copy of the recording was admitted into evidence at the hearing. In the recording, Gutierrez can be seen getting out of her vehicle and looking somewhat unsteady, bumping or almost bumping into Batham as she walks past him, losing her balance multiple times during the portion of the field sobriety tests that Batham observed, and being unable to walk in a straight line as she walks toward Batham during the field sobriety tests, turns around, and walks back toward Pauls. When asked if he noticed anything new while watching the video, Batham testified,

> [A]s she was walking toward me, it's—her gait is unusual. Her gait is unusual and it seems like she's stepping—her steps are short. She doesn't know exactly the reason why she was heading toward me at all. She stops, it seems like she's very confused as to why she's there.
>
> . . . .
>
> I don't know the decision that Officer Pauls had made at that point. I don't know exactly what point in the SFST's he was in other than the walk and turn is what I believe she was attempting to do as she walked toward me. But I, upon watching

4

the video again, I realize that she was actually doing the one-leg stand, counting as she was walking toward me, which was unusual but not the most unusual thing I've seen in my experience.

When asked if based on his observations, he believed that Gutierrez was "possibly driving while intoxicated," Batham testified that he believed Pauls "made the correct decision."

After Batham testified, Gutierrez argued that the evidence should be suppressed because the officers did not have probable cause to arrest her for driving while intoxicated. Gutierrez also argued that the case should be dismissed under the Michael Morton Act, *see* Tex. Code Crim. Proc. art. 39.14, and *Brady v. Maryland*, 373 U.S. 83, 87 (1963), because Officer Pauls failed to include Captain Barfield's exculpatory statements in his offense report and because the State failed to timely disclose Captain Barfield's identity so as to enable Gutierrez to interview Barfield while he could still recall the investigation. At the conclusion of the hearing, the district court denied the motion to suppress and the motions to dismiss and later, upon Gutierrez's request, made findings of fact and conclusions of law. Gutierrez pleaded no contest to driving while intoxicated and afterwards filed a motion for new trial that was overruled by operation of law. This appeal followed.

## DISCUSSION

### Motion to suppress

In the first part of Gutierrez's first point of error, she asserts that the trial court abused its discretion by denying her motion to suppress. According to Gutierrez, the State failed to establish that the officers had probable cause to arrest Gutierrez for driving while intoxicated.

5

*Standard of review and applicable law*

"We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard." *Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021) (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013)). "We afford almost complete deference to the trial court's determination of historical facts, especially when based on 'an assessment of credibility and demeanor,' but conduct a de novo review of mixed questions of law and fact that do not hinge on credibility or demeanor determinations." *Furr v. State*, 499 S.W.3d 872, 886 (Tex. Crim. App. 2016); *see also State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013). "We will uphold the trial court's ruling if it is correct under any applicable theory of law and the record reasonably supports it." *Martin*, 620 S.W.3d at 759 (citing *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019)).

"As the prevailing party at the trial level, appellee gains the benefit of deference on factual findings made in [its] favor." *State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017) (citing *State v. Krizan-Wilson*, 354 S.W.3d 808, 815-16 (Tex. Crim. App. 2011)). "When a trial judge makes express findings of fact, an appellate court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record." *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). "However, whether the facts, as determined by the trial court, add up to reasonable suspicion or probable cause to support a search or seizure under the Fourth Amendment is a legal question to be reviewed de novo." *State v. Colby*, 604 S.W.3d 232, 236 (Tex. App.—Austin 2020, no pet.); *see Ford*, 537 S.W.3d at 23; *Duran*, 396 S.W.3d at 571; *Kerwick*, 393 S.W.3d at 273.

The Fourth Amendment to the United States Constitution requires probable cause to support an arrest. *Ford*, 537 S.W.3d at 23. "Probable cause exists, under the totality of the

circumstances, if the evidence shows at the moment of arrest that 'the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense.'" *State v. McGuire*, 689 S.W.3d 596, 602 (Tex. Crim. App. 2024) (quoting *Parker v. State*, 206 S.W.3d 593, 596-97 (Tex. Crim. App. 2006)).

This case involves a warrantless arrest for the offense of driving while intoxicated. "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim. Proc. art. 14.01(b). "Probable cause for a warrantless arrest under article 14.01(b) may be based on an officer's prior knowledge and personal observations, and an officer may rely on reasonably trustworthy information provided by another person in making the overall probable cause determination." *State v. Martinez*, 569 S.W.3d 621, 628 (Tex. Crim. App. 2019) (citing *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011)). "Thus, all of the information to support probable cause does not have to be within an officer's personal knowledge." *Woodard*, 341 S.W.3d at 412. When multiple law enforcement officers are shown to be cooperating in an investigation, "the sum of the information known to the cooperating officers—their cumulative information— should be considered in assessing probable cause." *Martinez*, 569 S.W.3d at 627.

Evidence establishing probable cause to believe that a person has committed the offense of driving while intoxicated includes "erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, any admissions by the defendant concerning what, when, and how much he had been drinking." *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010).

7

Other evidence includes the odor of alcohol on a person's breath, unsteady balance, and a staggered gait. *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985).

*Analysis*

In this case, the trial court's findings of fact included the following:

1.  At approximately 5:47 p.m. on January 16, 2018, a 911 call was placed about a single vehicle collision in the 7900 block of Southwest Parkway in Travis County, Texas.

2.  As a result of the call, dispatchers sent the fire department, EMS and police to the scene. The first to arrive on the scene were trucks and personnel from the Oak Hill Fire Department (hereinafter "the Fire Department"), who blocked traffic and began to assess the scene.

3.  The vehicle appeared to have crossed lanes of traffic and slid off the road coming to rest on the edge of the street partially blocking traffic.

4.  Within less than 10 minutes, APD Officer Pauls arrived on scene and walked up to the crashed vehicle.

5.  While Officer Pauls was on his way, Fire Department Captain Barfield provided him information about the collision and identified witnesses at the scene.

6.  Captain Barfield relayed to Officer Pauls that the person in the crash was refusing medical treatment from him and that a witness also told him that the driver in the crash had been drinking but Captain Barfield did not see anything or smell anything on the driver and she was asking the Fire Department to take her home.

7.  During this conversation, Officer Batham arrived on scene and is directed by Officer Pauls to speak to the witness who had stopped at the scene.

8.  Before Officer Batham goes to do what Officer Pauls instructs him, Batham decides the driver has been drinking before the crash and he decides to

8

conduct field sobriety tests.

9. As Officer Batham is at the scene, the defendant gets out of the vehicle and he observes the driver unsteady on her feet and swaying.

10. Officer Batham also observed the defendant to have an odor of alcohol about her breath with glassy and red eyes as he got near her.

11. As Officer Batham went to the witness's car to speak with them, the defendant followed him and stopped at the door seemingly confused. As she walked by, she also lost her balance and bumped into Officer Batham.

12. Officer Batham goes to identify the witness and she relays seeing the driver cross lanes of traffic and crash on the side of the road. She tells Officer Batham that the driver told her she had been drinking with friends at work. The witness gives her name and phone number to Officer Batham.

13. During this conversation, Officer Pauls has relocated with the defendant to conduct field sobriety tests.

14. Once Officer Batham had secured the scene of the crash, he drove over to where Officer Pauls was conducting field sobriety tests.

15. While Officer Batham was there, he continued to observe the defendant sway and lose her balance for a second time.

16. Officer Batham observed her performance of what he believed was the One Leg Stand based on what Officer Pauls had demonstrated and since the defendant repeated the walk and turn walking to Officer Batham. When she reached Office Batham, she stopped and talked to him about being confused as to what she was supposed to do.

17. During this encounter, Officer Batham continued to smell an odor of alcohol. He further believed the defendant had slurred speech and was confused about her instructions.

18. After this, Officer Pauls made the decision to arrest the defendant and she refused a request for a sample of her breath or blood.

9

19. In his probable cause affidavit, Officer Pauls listed signs of intoxication which included a moderate odor of an alcoholic beverage, bloodshot watery and glassy eyes; slurred speech, swaying and needing support, along with the clues he observed in the field sobriety tests. He did not include that the fire officer told him he did not smell anything.

The trial court also found that Officer Batham was a credible witness. Based on these findings, the trial court concluded that the officers had probable cause to arrest Gutierrez for driving while intoxicated.

In arguing that the officers lacked probable cause, Gutierrez correctly observes that some of the findings are not supported by the record. Specifically, finding 8 incorrectly identifies Batham rather than Pauls as the officer who decided to conduct field sobriety tests on Gutierrez, findings 10 and 17 incorrectly identify Batham rather than Pauls as the officer who smelled an odor of alcohol on Gutierrez, and finding 10 also incorrectly states that Batham observed Gutierrez with "glassy and red eyes as he got near her," an observation that is found nowhere in Batham's testimony. However, most of the trial court's findings are supported by the record, including findings that Gutierrez was involved in a single-vehicle collision, that a witness observed Gutierrez's vehicle cross multiple lanes of traffic and crash on the side of the road, that the witness reported to Batham that Gutierrez had admitted to her that she had been drinking with friends, that Gutierrez was unsteady on her feet as she exited her vehicle, that Gutierrez lost her balance and bumped into Officer Batham as she was walking past him, that Gutierrez swayed and lost her balance multiple times during the field sobriety tests, that Gutierrez slurred her speech as she spoke to Batham, and that Pauls smelled an odor of alcohol on Gutierrez. These findings, in their totality, support the trial court's conclusion that the officers, working together,

10

had probable cause to arrest Gutierrez for driving while intoxicated. *See Martinez*, 569 S.W.3d at 627; *State v. Garcia*, 569 S.W.3d 142, 152-53 (Tex. Crim. App. 2018).

Gutierrez further contends that Batham's testimony "seemed contrived for the purpose of securing a conviction." However, it was for the trial court to determine whether to believe Batham's testimony, and it found Batham credible. We are to defer to that determination. *See Duran*, 396 S.W.3d at 573. On this record, we conclude that the trial court did not abuse its discretion in denying Gutierrez's motion to suppress.

We overrule the first part of Gutierrez's first point of error.

**Motions to dismiss**

In the second part of Gutierrez's first point of error, she asserts that the trial court abused its discretion by denying her motions to dismiss for the State's failure to timely disclose evidence, specifically the identity of and exculpatory statements by Oak Hill Fire Captain Barfield, who told Officer Pauls that when he interacted with Gutierrez, "I don't smell anything, I don't see nothing . . . I'm not asking her anything, she doesn't appear to be [inaudible] . . . she's not acting like she's had any drinks or anything . . . ." Gutierrez argues that the State's failure to timely disclose this evidence violated both the Michael Morton Act, Tex. Code Crim. Proc. art. 39.14, and *Brady v. Maryland*, 373 U.S. 83, 87 (1963).[2]

---

[2] We note that in her opening brief, Gutierrez does not argue that the State violated *Brady* and only addresses *Brady* in her reply brief. "Generally, an appellant may not raise a new issue in a reply brief," but "courts of appeals can consider arguments and authorities in a reply brief that are related to the arguments in the original brief." *Chambers v. State*, 580 S.W.3d 149, 161 (Tex. Crim. App. 2019). We conclude that in this case, because Gutierrez argued the State violated both the Michael Morton Act and *Brady* in the court below, they are sufficiently related here.

11

*Standard of review and applicable law*

We review a trial court's rulings regarding pretrial discovery for abuse of discretion. *See Francis v. State*, 428 S.W.3d 850, 855 (Tex. Crim. App. 2014), *abrogated on other grounds by State v. Heath*, ___ S.W.3d ___, 2024 WL 2952387 (Tex. Crim. App. June 12, 2024); *Sopko v. State*, 637 S.W.3d 252, 256 (Tex. App.—Fort Worth 2021, no pet.). We are to defer to a trial court's ruling that falls within the zone of reasonable disagreement. *Francis*, 428 S.W.3d at 855.

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87; *see Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011); *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006); *Kulow v. State*, 524 S.W.3d 383, 388 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). "The Supreme Court later explained that *Brady* essentially created a federal constitutional right to certain minimal discovery." *Pena*, 353 S.W.3d at 809 (citing *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976)). To find reversible error under *Brady* and its progeny, a defendant must show that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to her; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the proceeding would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Under this test, the defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable that the outcome of the proceeding would have been different had the prosecutor made a timely disclosure. *See id.* "The

12

mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109.

Additionally, "[w]hen favorable evidence is not concealed but disclosed untimely, a defendant bears the burden to show that the delay resulted in prejudice." *Kulow*, 524 S.W.3d at 388 (citing *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999)). "A defendant is prejudiced if the result of the proceeding would have been different had the evidence been disclosed earlier." *Id*. "Prejudice is not shown where the information is disclosed in time for the defendant to make effective use of it at trial." *Id*.

The State's discovery obligations are more expansive under the Michael Morton Act, which provides that

> *[A]s soon as practicable* after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written, or recorded statements of the defendant or a witness . . . that constitute or contain evidence *material to any matter* involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

Tex. Code Crim. Proc. art. 39.14(a) (emphases added). The Court of Criminal Appeals recently held that this requirement includes "discoverable items which, unbeknownst to the prosecuting attorney, are in the possession of law enforcement agencies" and that "'[a]s soon as practicable' as the phrase appears in Article 39.14(a) means as soon as reasonably possible and does not contain a knowledge requirement on behalf of the prosecution." *Heath*, 2024 WL 2952387, at *1. "Thus, items discoverable under Article 39.14(a) that are in the possession of law enforcement must be produced as soon as practicable after the State's receipt of a timely request

13

for discovery." *Id.* Additionally, for purposes of Article 39.14(a), the Court of Criminal Appeals has broadly defined "material" as "having some logical connection to a fact of consequence," i.e., "synonymous with relevant." *Watkins v. State*, 619 S.W.3d 265, 290-91 (Tex. Crim. App. 2021).

Similarly, another provision of the Act, Article 39.14(h), mandates that "the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." Tex. Code Crim. Proc. art. 39.14(h). The State's duty of disclosure under this provision "is much broader than the prosecutor's duty to disclose as a matter of due process under *Brady vs. Maryland*." *Watkins*, 619 S.W.3d at 277. It creates "an independent and continuing duty for prosecutors to disclose evidence that may be favorable to the defense even if that evidence is not 'material,'" and it "requires disclosure of evidence that merely 'tends' to negate guilt or mitigate punishment." *Id.*

Violations of Article 39.14 are subject to a harm analysis. *See id.* at 291; *Poor v. State*, ___ S.W.3d ___, 2024 WL 3446969, at *8 (Tex. App.—Eastland July 18, 2024, no pet. h.) (op., designated for publication); *Fortuna v. State*, 665 S.W.3d 861, 869 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Sopko*, 637 S.W.3d at 256-57; *Branum v. State*, 535 S.W.3d 217, 225–26 (Tex. App.—Fort Worth 2017, no pet.); *see also Amoles v. State*, No. 05-21-00556-CR, 2022 WL 3572691, at *10 (Tex. App.—Dallas Aug. 19, 2022, no pet.) (mem. op., not designated for publication) (explaining that record must "demonstrate the requisite harm" to entitle appellant to reversal under Michael Morton Act); *Williamson v. State*, No. 04-20-00268-CR, 2021 WL 4976326, at *3 (Tex. App.—San Antonio Oct. 27, 2021, no pet.) (mem. op., not designated for publication) ("Violations of statutory duties under [A]rticle 39.14 of the Texas Code of Criminal

14

Procedure warrant a harm analysis."); *Perkins v. State*, No. 03-19-00356-CR, 2021 WL 2172547, at *3 (Tex. App.—Austin May 28, 2021, no pet.) (mem. op., not designated for publication) ("Reviewing courts must conduct a harm analysis before determining whether reversal is proper for violation of [A]rticle 39.14."). Because the State's duties under the Michael Morton Act are statutory in nature, any violation of the Act "must be disregarded" unless it affects a defendant's "substantial rights." Tex. R. App. P. 44.2(b).

### *Analysis*

Here, the record reflects that Gutierrez was arrested on January 16, 2018. On April 6 and 19, 2018, the videos from the officers' body cameras were provided to Gutierrez. At a pretrial setting on January 28, 2019, defense counsel informed the State that the videos contained exculpatory statements made by an unidentified witness (later identified as Captain Barfield) who was not visible on the camera. An attorney for the State watched the videos in February 2019 but was unable to identify the witness. On May 30, 2019, the Austin Police Department Incident Detail Report, which included the names of all responding APD officers and the identities of all responding agencies, was made available to Gutierrez. Other evidence subsequently made available to Gutierrez included EMS records on June 12, 2019, and Austin Fire Department records on June 18, 2019.

However, Captain Barfield's name and identity as an Oak Hill Firefighter had not yet been disclosed to Gutierrez on June 17, 2019, the date on which her trial was originally scheduled to begin. On that date, Gutierrez filed a motion for continuance, arguing that the State had failed to comply with the Michael Morton Act by not disclosing the identity of the witness. The trial court granted the motion for continuance and rescheduled trial for September 9, 2019.

15

On September 9, Gutierrez filed her first motion to dismiss, arguing that the State had not yet disclosed the witness's identity. At that time, the trial court ordered the State to disclose the witness's identity, and the State complied on September 13, 2019, providing Gutierrez with Captain Barfield's name and address. In a letter to the trial court dated October 8, 2019, Gutierrez argued that the State's identification of Barfield "at this stage does absolutely no good for the defense" and that Gutierrez was planning on moving forward with an amended motion to dismiss due to "prosecutorial misconduct on the part of all the State's agents, whether they be prosecutors, police, or fire department."

Following a lengthy delay in the case attributed to COVID-19, on October 27, 2022, Gutierrez filed a supplemental motion to dismiss, arguing that the State had violated both the Michael Morton Act and *Brady* through the State's failure to timely disclose Barfield's identity and Officer Pauls's failure to document his conversation with Barfield in his offense report, which Gutierrez contended was a violation of APD policy. On January 4, 2023, the trial court denied the motions as well as the motion to suppress as noted above.

We cannot conclude on this record that Gutierrez is entitled to reversal of her conviction for the State's disclosure of Barfield in September 2019. Regarding the alleged violation of *Brady*, Captain Barfield's statements are undoubtedly favorable to Gutierrez, but because this is a case involving, at most, untimely disclosure of Captain Barfield's identity rather than concealment, Gutierrez must show that she was prejudiced by the untimely disclosure, i.e., that the result of the proceeding would have been different had Barfield's identity been disclosed earlier. She has failed to make that showing here. At the time of the hearing on her motion to suppress, in January 2023, the State had already disclosed Barfield's identity. Thus, at the hearing, Gutierrez was able to question Barfield on his exculpatory statements. Although

16

Barfield was unable to recall making those statements at the time of the hearing, Gutierrez has not shown that if the State had disclosed his identity earlier, Barfield would have been able to recall those statements. Moreover, even if a timely disclosure of Barfield's identity would have resulted in him being able to recall those statements, Gutierrez has failed to show that there is a reasonable probability that the result of the suppression hearing would have been different, particularly considering the evidence of Gutierrez's intoxication, summarized above.

Even assuming the State failed to disclose Barfield's identity "as soon as practicable" as required by Article 39.14(a) of the Michael Morton Act, we cannot conclude on this record that Gutierrez was harmed by that alleged violation. Barfield, a fire captain, testified that when he is investigating a crash or arriving at a crash scene, it is not his job to determine if a person is intoxicated and that he "wouldn't even know what to do" to make such a determination. Thus, balancing Barfield's exculpatory statements against the evidence of Gutierrez's intoxication, including the video evidence showing Gutierrez losing her balance multiple times and being unable to walk in a straight line during the field sobriety tests, Batham's testimony tending to show that Gutierrez was intoxicated, Hilario's statements to Batham regarding her observations of the crash, and Gutierrez's admission to Hilario that she had been drinking with friends, we are unable to say that the State's failure to disclose Barfield's identity earlier than it did affected Gutierrez's substantial rights.

We overrule the second part of Gutierrez's first point of error.

**Probable-cause affidavit**

The trial court's findings of fact included the following finding regarding Officer Pauls's probable-cause affidavit:

17

In his probable cause affidavit, Officer Pauls listed signs of intoxication which included a moderate odor of an alcoholic beverage, bloodshot watery and glassy eyes; slurred speech, swaying and needing support, along with the clues he observed in the field sobriety tests. He did not include that the fire officer told him he did not smell anything.

In her second point of error, Gutierrez asserts that the trial court abused its discretion by considering the officer's probable-cause affidavit in its suppression ruling because the affidavit was not admitted into evidence at the suppression hearing and contained testimonial, out-of-court statements made by a witness who was unavailable for questioning at the hearing. Therefore, according to Gutierrez, the trial court's consideration of the affidavit violated the Confrontation Clauses of the United States and Texas Constitutions.[3] *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10.

Gutierrez is raising these complaints for the first time on appeal. She failed to raise them in her motion for new trial, which was filed after the trial court referenced the affidavit in its findings of fact, or in any objections to the trial court's findings. Thus, Gutierrez has failed to preserve error, if any, in the trial court's consideration of the affidavit in its suppression ruling. *See* Tex. R. App. P. 33.1; *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007); *see also Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992) (concluding that raising objection in timely filed motion for new trial preserves error for appellate review when "appellant had no opportunity to object to the trial court's action until after that action was taken"); *Bunton v. State*, 136 S.W.3d 355, 368 (Tex. App.—Austin 2004,

---

[3] We note that Texas courts are split as to whether the right of confrontation applies to pretrial suppression hearings. *Compare Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd) (concluding that right of confrontation does not apply to pretrial suppression hearings), *and Vanmeter v. State*, 165 S.W.3d 68, 74 (Tex. App.—Dallas 2005, pet. ref'd) (same), *with Curry v. State*, 228 S.W.3d 292, 298 (Tex. App.—Waco 2007, pet. ref'd) (concluding that right of confrontation applies to pretrial suppression hearings).

18

pet. ref'd) (explaining that complaints regarding confrontation-clause violations must be preserved in trial court).

We overrule Gutierrez's second point of error.

**CONCLUSION**

We affirm the trial court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed:   August 16, 2024

Do Not Publish